*State ex rel.* ROBERT F. ROTH, *State Director of Public Assistance*

*v.*

EDGAR B. SIMS, *Auditor of the State of West Virginia*

(No. 10667)

Submitted April 13, 1954. Decided May 4, 1954.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for relator.

*Milton Koslow,* for respondent.

GIVEN, PRESIDENT:

In this original proceeding in mandamus relator, State of West Virginia, at the relation of Robert F. Roth, State Director of Public Assistance, prays the issuance of a peremptory writ directing defendant, Edgar B. Sims, Auditor of the State of West Virginia, to honor a requisition drawn by relator, providing for payment of ninety seven dollars and fifty cents to Elizabeth Mitchell, an employee of the Department of Public Assistance, and requiring defendant to issue his warrant in payment of the requisition. It is alleged that the Department of Public Assistance granted the employee "educational leave to enable her to study, at the University of North Carolina, in certain technical and specialized fields relating to child-welfare"; that the employee accepted the grant and "agreed upon the completion thereof to return as an employee of the Department of Public Assistance, Division of Child Welfare, for at least one year or repay the amounts received for compensation during said leave"; and that defendant refused to honor the requisition drawn for the estimated subsistence and expenses for the month of September, 1953.

No question of fact is involved. The proceeding is disposed of upon the petition of relator; the demurrer and answer of defendant; exhibits made part of the record by stipulation; and oral arguments and briefs.

Questions involved relate to the right of the Director of the Department of Public Assistance to direct that payment be made for educational leave to the employee of that department from funds paid into the State treasury by the Federal Government, pursuant to provisions of the Social Security Act relating to child welfare. Contained in the Act are special provisions relating to cooperation between the respective States and the Federal Government, in matters relating to child welfare, and certain sums were made available for such purposes, to be paid to States submitting and having approved by the Federal Government plans for such services. "For the purpose of enabling the United States, through the Administrator, to cooperate with State public-welfare agencies", certain sums were appropriated to be allotted to the States "on the basis of plans developed jointly by the State agency and the Administrator". 42 U.S.C., Section 721. The funds against which the requisition involved herein was drawn were paid into the State treasury by the Federal Government by virtue of a like appropriation.

By Chapter 1 of the 1936 Acts of the Legislature, First Extraordinary Session (see Chapters 9 and 49 of Michie Company's Code of West Virginia, 1949), there was created a State Department of Public Assistance for the purpose of administering the public welfare services of the State. As stated in Section 1 of the Act, the purposes were: "(1) To assemble the public welfare services of the state into a single integrated system. (2) To modernize the statutory provisions pertaining to the welfare services to promote more effective activity. (3) To add to this system certain public assistance services which shall conform to the requirements of the federal 'Social Security Act'". Chapter 9, Article 1, Section 3 of the Act reads: "The state of West Virginia assents to the purposes of the act of the Congress of the United States, entitled the 'Social Security Act,' approved August fourteenth, one thousand nine hundred and thirty-five, and assents to such additional federal legislation as is not inconsistent with the purposes of this chapter.

"The state of West Virginia further accepts the appropriations of money by Congress in pursuance of the 'Social Security Act' and authorizes the receipt of such money into the state treasury for the use of the State Department of Public Assistance in accordance with this chapter and the conditions imposed by the 'Social Security Act.' " Notice the significance of the provision that the money to be received into the State treasury was to be received upon "the conditions imposed by the 'Social Security Act' ".

Section 11 of Article 3 of Chapter 9 of the Act reads: "To insure adequate standards of public service, the state director shall establish regular periods of technical and specialized instruction for employees of the department, county directors and their assistants.

"The state director shall designate the persons who shall attend each period of instruction. Designated attendance shall be compulsory and shall be compensated for as a part of regular employment."

By the same Act, Chapter 49, Article 1, Section 1, as amended, it is provided: "The purpose of this chapter is to provide a comprehensive system of child welfare throughout the state.

"The child welfare services of the state shall be administered by the state department of public assistance, the several county departments, and the licensing board herein provided in accordance with the provisions of this chapter."

With these provisions of the Social Security Act and the Acts of the State Legislature before us, the method of cooperation between the United States and the State as to child welfare becomes clear. The Congress appropriates certain funds to be paid into the State treasury for child welfare purposes, upon compliance by the State with certain requirements, and especially on the "basis of plans developed jointly by the State agency and the Administrator". After agreement between the State and the

Federal Government as to the plan of operation by the State Welfare Agency and the manner of the expenditure of the funds, the State "authorizes the receipt of such money into the state treasury for the use of the State Department of Public Assistance in accordance with this chapter and the conditions imposed by the 'Social Security Act.'" It must not be overlooked that the Social Security Act imposes the agreement as to the plan, and that the State accepts the money on "conditions" imposed by the Social Security Act.

In accordance with these legislative provisions, the State, through its proper agency, and the Federal Government, through its proper agency, established and agreed upon such a plan. The plan so established provided for expenditures from the money paid into the State treasury, against which the requisition involved was drawn, for professional education of members of the State Department of Public Assistance in technical and specialized fields relating to child welfare. Thus it becomes clear that the funds against which the requisition was drawn are funds received by the State, for the specific purpose for which the expenditure was authorized by relator, in compliance with the conditions of the approved and adopted plan and in compliance with the conditions of acceptance contained in the State legislative Act.

Defendant contends that the payment of the sum for which the requisition was drawn would constitute a gift of public funds for a private purpose, and therefore would be in violation of provisions of Article X of the State Constitution. We think there is no merit in the contention. It is true, of course, that the employee will receive a special benefit from the expenditure. That, however, is not the test. We have no difficulty in finding that the funds are to be expended for a public purpose. Of special concern to the State, in fact, to any government, are the health and welfare of its youth. Obviously, the successful and efficient exercise of such a governmental function covering such a broad and specialized field requires the

services of a great number of specialized leaders and workers. It also requires experimentation in new methods of assistance. Thus the necessity for the State to encourage and assist individuals in preparing and qualifying themselves for such services. The cost to the government is returned to the public in the better health and welfare of its people. It is no objection to such a program to say that a certain individual may fail to render services to the State after having agreed to do so on condition of receiving assistance. The program must be viewed as a whole, in the interests of better health and welfare, not measured by the mistake of some one of its administrators in selecting some individual for the schooling or training who may, after receiving assistance, dishonestly refuse to serve the State. See *State ex rel. West Virginia Board of Education* v. *Sims, Auditor,* 139 W. Va. 802, 81 S. E. 2d 665; *Johnson* v. *Jones, Auditor,* 52 S. D. 64, 216 N. W. 584; *Massachusetts Agricultural College* v. *Marden, State Treasurer,* 156 Mass. 150, 30 N. E. 555, 557.

Questions raised as to whether the funds paid into the State treasury become State funds, or whether such funds are received by the State in trust, need not be here determined for, as pointed out above, the funds were appropriated by the Congress for a definite purpose, were paid to the State for that definite purpose, and were received by the State pursuant to a definite agreement that such funds were to be expended for that purpose. In such circumstances, it can not be doubted that the clear legal duty of the State officials charged with disbursing the funds is that they must do so in accordance with the legislative provisions relating thereto. For the same reason, we need not discuss the contention of defendant that the State has made no appropriation for the purposes for which the requisition was drawn. It may be pointed out, however, that the State Legislature has expressly provided that the State Director of the Department of Public Assistance "shall establish regular periods of technical and specialized instruction for employees * * * shall designate the persons who shall attend",

and that those who attend shall be compensated for such attendance "as a part of regular employment". Assuming that the Federal funds received by the State become State funds, and that an appropriation thereof by the State Legislature is necessary, is not the general appropriation by the State Legislature, for the purpose of paying employees of the Department of Public Assistance, all that could be required under the provisions of Section 3, Article X, of the State Constitution?

One other contention of defendant merits consideration. The contention is that the Act of Congress relating to the plan to be adopted by the Federal Government and the State relating to child welfare is void for want of sufficient standards governing the exercise of functions attempted to be delegated by Congress to those charged with the duty of carrying out those functions. Assuming that defendant is entitled to raise the question, see *Massachusetts* v. *Mellon*, 262 U. S. 447, 67 L. ed. 1078, 43 S. Ct. 597, we think the question without substantial merit. 42 U.S.C. 721, quoted above, requires that the funds allotted to the State for child welfare services "shall be expended for payment of part of the cost of * * * child-welfare services * * * for developing State services for the encouragement and assistance of adequate methods of community child-welfare organization * * * and for paying the cost of returning any runaway child * * *", and requires that the "experience of voluntary agencies shall be utilized in accordance with child-care programs and arrangements in the States and local communities as may be authorized by the State." In our view, these provisions may not only be interpreted so as to authorize the "encouragement and assistance of adequate methods" of child welfare, by specialized training, but sufficiently provide standards for the plan of operation to be adopted by the State and Federal Governments in the carrying out of the legislation, and sufficiently prescribe the limits of authority attempted to be delegated by the Act of Congress. See *State* v. *Bunner*, 126 W. Va. 280, 27 S. E. 2d 823; *West Central Producers Co-Operative*

*Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797; *Rinehart* v. *Woodford Flying Service,* 122 W. Va. 392, 9 S. E. 2d 521; *Chapman* v. *The Huntington, West Virginia, Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 79 L. ed. 446, 55 S. Ct. 241. It can not be expected, even if possible, that in prescribing the standards for or in the enactment of such legislation as that involved here, the legislative body could determine such matters as the necessity in each instance, in each State, for specialized training, the qualifications or willingness of each individual who receives such training, or the amount or amounts to be expended therefor. Necessarily, such matters must rest in the discretion of the persons to whom the duty of administering the program is entrusted.

Having reached the conclusion that it is the clear legal duty of defendant to honor the requisition described in the petition, the peremptory writ prayed for will be awarded.

*Writt awarded.*