STATE OF WEST VIRGINIA *Ex Rel.* HULETT
C. SMITH, GOVERNOR OF THE STATE OF
WEST VIRGINIA

*v.*

JOHN H. KELLY, TREASURER OF THE STATE OF
WEST VIRGINIA

(No. 12442)

Submitted March 16, 1965.     Decided March 26, 1965.

*C. Donald Robertson*, Attorney General, *Thomas B. Yost*, Assistant Attorney General, for relator.

*J. Patrick Bower, Leo Catsonis*, Assistant Attorneys General, for respondent.

CALHOUN, JUDGE:

In this proceeding in mandamus instituted pursuant to the original jurisdiction of this Court in cases of this nature, Honorable Hulett C. Smith, Governor of the State of West Virginia, seeks to require Honorable John H. Kelly, State Treasurer, to perform certain acts required of him in his official capacity, in order to implement and to effectuate a certain amendment to the Constitution of West Virginia known as the "Better Roads Amendment" and an act of the legislature enacted pursuant to the constitutional amend-

ment. The constitutional amendment provides for the issuance and selling of state bonds not exceeding in the aggregate two hundred million dollars for the building and construction of state roads and highways, in amounts not to exceed twenty million dollars in any fiscal year.

The underlying and primary question presented for decision is whether the constitutional amendment is invalid because of a failure to comply with the requirement of Constitution, Article XIV, Section 2, that a proposed constitutional amendment be published, in some newspaper in every county of the state in which a newspaper is printed, at least three months before the general election at which the proposed amendment is submitted for ratification or rejection; and whether therefore, the enabling act of the legislature enacted pursuant to the constitutional provision is invalid. The ultimate question is whether bonds issued pursuant to the constitutional amendment and the enabling act of the legislature will be legal and valid when issued.

The facts pertinent to a decision of the case are not in controversy. The facts are fully set forth in the mandamus petition. The legal question is raised by a demurrer to the petition which asserts that the facts stated in the petition demonstrate the invalidity of the constitutional amendment and, consequently, the invalidity of the enabling act of the legislature. The matter was submitted to the Court for decision upon the pleadings referred to above and upon written briefs filed and oral arguments made before the Court in behalf of the respective parties.

By virtue of House Joint Resolution Number 10, adopted on March 7, 1963, two-thirds of the members of both houses of the legislature agreeing thereto, and Chapter 22, Acts of the Legislature, Regular Session, 1964, the constitutional amendment in question was submitted to the people for ratification or rejection at the General Election which was held on November 3, 1964. At the election so held, 455,294 votes were cast for and 116,438 votes were cast against the proposed amendment; and, accordingly, the governor issued a proclamation declaring that the proposed amendment was ratified.

Pursuant to the ratification of the proposed amendment, the legislature, on February 16, 1965, passed Enrolled Senate Bill No. 30, the validity of which is in question in this case. The act was made effective from the date of its passage and was duly approved by the governor. Among other provisions, the act authorized the issuance and sale by the governor of bonds of the State of West Virginia in an amount not exceeding twenty million dollars during the fiscal year ending June 30, 1965, and in an amount not exceeding twenty million dollars during the fiscal year ending June 30, 1966, for the purpose of raising funds for the building and construction of free state roads and highways pursuant to the Better Roads Amendment.

Pursuant to provisions of Enrolled Senate Bill No. 30, Governor Smith, by letter dated February 25, 1965, offered for sale to the State Sinking Fund Commission bonds in the aggregate amount of one hundred thousand dollars. By an order dated March 4, 1965, the State Sinking Fund Commission ordered the purchase of such bonds in the amount of one hundred thousand dollars. Pursuant to that purchase, the governor prepared an interim certificate in the amount of one hundred thousand dollars to be issued to the State Sinking Fund Commission, to be exchanged for state road bonds when such bonds are prepared, as authorized by Section 12 of Enrolled Senate Bill No. 30; and, by letter dated March 4, 1965, the governor forwarded the interim certificate to the respondent requesting that he affix his signature thereto in his official capacity as state treasurer. The governor's letter further authorized and directed the respondent immediately to take all steps required of him in order to effectuate the issuance of bonds in the amount of twenty million dollars for public highway purposes. Enrolled Senate Bill No. 30 imposes various duties upon the state treasurer in order to implement and effectuate the provisions of the constitutional amendment and the enabling act of the legislature.

By letter dated March 5, 1965, directed to the governor, the respondent state treasurer respectfully declined to comply with the governor's request, and any other similar re-

quest in relation to any other certificates or bonds to be issued pursuant to the constitutional amendment and the enabling act of the legislature "until the constitutionality of said amendment and statute has been settled by a court of competent jurisdiction."

Constitution, Article XIV, Section 2, provides that the legislature, in proposing a constitutional amendment, shall "cause the same to be published" in the manner and for the period of time previously stated in this opinion. Section 6 of Chapter 22, Acts of the Legislature, Regular Session, 1964, provides that the "governor shall cause the said proposed amendment * * * to be published one time at least three months before such election in some newspaper in every county in which a newspaper is printed, * * *."

Three months prior to the General Election held on November 3, 1964, was August 3, 1964. On August 1, 1964, Honorable William Wallace Barron, who was then governor of this state, issued his proclamation directing that the Better Roads Amendment be submitted to the voters for ratification or rejection at the General Election to be held on November 3, 1964. Previously in this opinion we have stated that the proposed amendment was ratified by a large majority of votes cast on the question.

It is clear that mandamus is a proper proceeding by which to require a public official to perform a nondiscretionary legal duty. *State ex rel. Wheeling Downs Racing Association* v. *Perry et al.,* 148 W. Va. 68, pt. 1 syl., 132 S. E. 2d 922, in which many of the more recent cases are listed. See also *State ex rel. Yahn Electric Co.* v. *Baer et al.,* 148 W. Va. 527, 135 S. E. 2d 687. Mandamus, therefore, is a proper proceeding by which to compel the state treasurer to perform the nondiscretionary duties required of him as state treasurer and specifically by Enrolled Senate Bill No. 30, if it is determined that the act which imposes such duties is constitutional and valid.

In approaching a consideration of the question of the constitutionality of the statute enacted pursuant to the constitutional amendment, we bear in mind that a court

has a duty to endeavor to find a means of upholding the constitutionality of a legislative enactment when its constitutionality is assailed, but also a duty to declare it invalid if it is clearly unconstitutional. *Nuckols* v. *Athey,* 149 W. Va. 40, pt. 1 syl., 138 S. E. 2d 344; *State ex rel. Slatton* v. *Boles,* 147 W. Va. 674, pt. 7 syl., 130 S. E. 2d 192; *Tanner* v. *Premier Photo Service, Inc.,* 147 W. Va. 37, 125 S. E. 2d 609; *State* v. *Schoonover,* 146 W. Va. 1036, 124 S. E. 2d 340; *Farley* v. *Graney,* 146 W. Va. 22, 119 S. E. 2d 833; *Appalachian Power Co.* v. *County Court of Mercer County et al.,* 146 W. Va. 118, 118 S. E. 2d 531; *Board of Education of Wyoming County* v. *Board of Public Works et al.,* 144 W. Va. 593, pt. 3 syl., 109 S. E. 2d 552.

It is conceded by counsel for the governor that there was not a literal compliance with the requirement of Constitution, Article XIV, Section 2, that a proposed amendment be published in some newspaper in every county in the state in which a newspaper is printed, at least three months before the election at which the proposed amendment is submitted for ratification or rejection; but it is contended that there was a substantial compliance with the requirement which, under prior decisions of this Court, constitutes a legal and sufficient compliance.

Counsel for the respondent earnestly insist that there was not a substantial compliance with the constitutional requirement, under the prior decisions of this Court; that consequently the amendment is invalid; and that the statute enacted by the legislature pursuant to the amendment is therefore unconstitutional.

In considering whether publication of the proposed amendment constituted a substantial compliance with the constitutional requirement, and in stating below the dates of publications in the several counties of the state, we bear in mind that the three-month period preceding the General Election of 1964 commenced on August 3. The several dates of publication are stated in the petition, the correctness of these allegations is not controverted and, of course, for purposes of ruling upon the demurrer to the petition, these allegations must be regarded as true and accurate.

In three counties the publication was on September 24; in one county the publication was on September 25; in eleven counties the publication was on September 26; in two counties the publication was on September 28; in six counties the publication was on September 30; in twenty-seven counties the publication was on October 1; in two counties the publication was on October 2; in one county the publication was on October 7; in one county the publication was on October 8 and in one county the publication was on October 22. It appears, therefore, that the maximum publication was forty days (in three counties) and that the minimum publication was twelve days (in one county), prior to the date of the General Election.

While decisions of appellate courts throughout the nation are by no means uniform, it is quite generally held that it is sufficient if there be a substantial compliance with constitutional requirements of publication, like or similar to the constitutional requirement in this state, in submitting a proposed amendment of a state constitution to a vote of the people. 16 Am. Jur. 2d, Constitutional Law, Section 35, page 207; 16 C.J.S., Constitutional Law, Section 7, page 36, (cases listed under note 6.5) and Section 9 (3), page 53, (cases listed under note 10, including two prior decisions of this Court).

Two prior decisions of this Court furnish aid in deciding the present case. *Herold et al.* v. *Townsend, Tax Commissioner,* 113 W. Va. 319, 169 S. E. 74, involved the adoption of the constitutional amendment known as the Tax Limitation Amendment. The question presented for decision in that case, as in the present case, was whether there had been a legally sufficient compliance with the requirement of publication contained in Constitution, Article XIV, Section 2. The question was raised upon a petition in mandamus filed in this Court by A. C. Herold and others, as citizens and taxpayers, to require Honorable T. C. Townsend, State Tax Commissioner, to revoke instructions issued by him to assessors of the state requiring them to list and classify real estate for purposes of taxation in conformity with the provisions of the constitutional amend-

ment. Literal compliance with the constitutional requirement was rendered virtually impossible in that case because House Joint Resolution No. 3, by which the amendment was proposed, was adopted on August 6, 1932, and the election at which it was submitted for ratification or rejection was held on November 8, 1932. Therefore, the three-month period prior to the election commenced two days after the adoption of the legislative resolution. The proposed amendment was, nevertheless, published in all counties of the state on or before August 13, 1932. In holding that there had been a substantial compliance with the constitutional requirement, the Court made the following observations which are believed to be pertinent to a proper decision of the present case:

"It is one of the stipulations agreed upon that the ratification or rejection of the amendment here under consideration was a campaign issue in West Virginia in 1932; that both the Democratic and Republican parties indorsed the amendment; that it was discussed by campaign speakers in every section of every county, in every magisterial district, and every municipality of the state; that it was freely commented upon and discussed from time to time by daily and weekly newspapers published in every county of the state; that tracts, pamphlets, circulars, post cards and letters, relating to the amendment, were printed and distributed in large numbers in every voting precinct in West Virginia prior to the November election, 1932; that it was the subject of discussion in radio addresses; that every agency known to modern conditions for the dissemination of information was used to enlighten the electorate of the state of the content of the amendment; that no public question which has been before the people of the state was as thoroughly discussed and as thoroughly understood by the electorate as the amendment in question. This fact is emphasized by the vote of 335,482 for, to 43,931 against, the amendment.

"Obviously the people of the state were not misled in any particular by the fact that the proposed amendment was not actually published at least three months before the election in some newspaper in every county in which a newspaper is printed.

The publication was completed as expeditiously as was humanly possible, following the legislative action. Information was widespread in regard to the amendment. The publication, so far as actual notice to the electorate was concerned, was necessarily far superior to that which could have been accorded an amendment submitted soon after the adoption of our Constitution in 1872. Today there is not a county in the state which does not receive copies of some daily published in the state on the date of its publication. How different in 1872! The cases from other courts, to which we have made reference, show a strikingly uniform holding against a literal construction of the time requirement relating to the publication of proposed amendments to state constitutions. While we consider the time requirement in our constitution to be mandatory, we believe, under the circumstances of the instant case that it has been substantially complied with. As aptly expressed in the Nebraska case, 'The self-imposed limitations on the power of the people to amend their fundamental law should not be so construed as to defeat the will of the people, plainly expressed, on account of a slight and unimportant failure to comply literally with such limitations, if the requirements are substantially observed.' "

*State ex rel. Morgan et al.* v. *O'Brien,* 134 W. Va. 1, 60 S. E. 2d 722, involved a mandamus proceeding instituted in this Court on October 21, 1948, by C. R. Morgan and three other citizens and taxpayers to require Honorable D. Pitt O'Brien, who was then Secretary of State of the State of West Virginia, to revoke his certification for submission of a proposed constitutional amendment to the electorate for ratification or rejection at the General Election which was to be held on November 2, 1948. The proposed amendment provided for the issuance and sale of bonds of the face value of fifty million dollars for the building and construction of a system of state secondary roads and highways.

As a basis for the relief sought, the petition alleged an absence of proper publication of the proposed amendment for at least three months as required by Constitution, Article XIV, Section 2.

An answer to the petition stated that the governor, through inadvertence, failed to comply literally with the constitutional requirement; that, on August 27, 1948, the governor caused his proclamation, including the proposed amendment, to be forwarded by registered mail, return receipt requested, to one newspaper in each county of the state; that, though the proclamation was duly received by the newspaper in Summers County on August 28, the man who was the editor of that newspaper ceased to be editor about the time of receipt of the proclamation; that he thereupon left the state and that in these circumstances no publication whatsoever was made in any newspaper in Summers County.

The answer further alleged that publications of the proclamation, including the proposed amendment, were made in newspapers printed in the remaining fifty-four counties on varying dates from August 30 to September 16. It appears, therefore, that the publications in fifty-four counties were made for a maximum period of sixty-three days and for a minimum period of forty-six days before the General Election at which the proposed amendment was submitted to the voters for ratification or rejection. The answer further alleged that the proposed amendment was endorsed by the Republican Party and by the Democratic Party at their respective state conventions held on August 14, 1948, and that the fact that the proposal would be submitted to the voters at the upcoming General Election received very wide publication and notice to the public by means of newspaper articles and editorials, political speeches, radio, wide distribution of pamphlets and otherwise. The answer alleged that, in the circumstances stated in the answer, there was a substantial compliance with the constitutional requirement.

The case was submitted to the Court on demurrer to the answer. On October 27, 1948, the Court, by a division of three to two, entered an order denying the relief prayed for in the petition. Pursuant to that order the written opinion of the majority and the dissenting opinion were filed later. At the subsequent election, the proposed amendment was ratified by the voters.

The able dissenting opinion in *State ex rel. Morgan et al. v. O'Brien, supra,* makes an extensive review of pertinent legal principles and strongly urges that there was not a proper compliance with the constitutional requirement. While the dissent was not based on the single proposition, it does point out that, when the case was decided by the majority, the Court did not have before it the fact of an overwhelming ratification of the proposal by the voters, as in the case of *Herold et al. v. Townsend, supra.* In that connection, we observe that the present case comes before the Court for decision after a very impressive margin of ratification of the proposed amendment by the voters.

In *State ex rel. Morgan v. O'Brien, supra,* the Court stated that, by its prior decision, the Court was committed to the proposition that the constitutional provision in question is mandatory but that a literal compliance therewith is unnecessary, a substantial compliance being sufficient in relation to the procedural matter relating to the time of publication; that a requirement of a literal compliance would permit public officials or editors of newspapers, as private citizens, unconscionably to hold a veto power of the people to amend the Constitution; that if, at the time of the decision, the proposal had been ratified by a substantial vote and by a large majority, the Court would, in such circumstances, be aided by the rule that every reasonable presumption should be given to the adoption of the amendment; that ratification of a proposed amendment by a large majority vote should be construed as a strong indication that the people were not misled or uninformed concerning the proposal; that if it had appeared that there had been any fraud, or any misinformation or lack of information as a result of the delayed publication, the Court would have been bound in good conscience to declare the submission of the proposal to be invalid; that in view of the widespread publicity preceding the election, the voters could not have been misled; that the intent of the framers of the Constitution and of the people who adopted it was to require such publication as would give sufficient notice to the voters to enable them to determine whether to vote to ratify or to

reject a proposed amendment and, this being so, the constitutional requirement should be applied realistically; that the term "substantial compliance" is a relative term whose very import indicates that it should be applied to practical situations, having in mind the basic purpose of the constitutional requirement; that widespread publicity, in addition to the publication of the governor's proclamation, cannot be construed to stand in lieu of the publication required by the Constitution and cannot be considered to bear directly on the question of substantial compliance, but is pertinent in considering whether the voters were, in fact, misled or deceived in voting for or against the proposal or in failing to vote on the question; that there appeared in the case, no attack on the submission of the proposal on the basis that the voters were wrongfully misled or that they were uninformed or misinformed as a result of the nature of the publication and that, therefore, the Court was authorized to inquire whether there had been a substantial compliance with the constitutional requirement.

The petition in the present case sets forth at length and in great detail the very wide and extensive publicity given to the proposed Better Roads Amendment throughout the state over an extended period of time prior to the date of the General Election of 1964. The petition states that the proposal was made a part of the state platform of the Republican Party and of the state platform of the Democratic Party; that it was endorsed publicly by both candidates for governor; that it was the subject of innumerable editorials and news stories in newspapers throughout the state; that it was endorsed by approximately fifty-five organizations and groups which are listed by name, including the State Chamber of Commerce; the W. Va. Federation of Labor, AFL-CIO; West Virginians for Better Roads; W. Va. Education Association; W. Va. Motor Truck Association; Southern W. Va. Automobile Club; Charleston Area Chamber of Commerce; W. Va. Farm Bureau; W. Va. Committee on Political Education; W. Va. Labor Federation; W. Va. Motel Association; Greater Parkersburg Chamber of Commerce; W. Va. Contractors Association; W. Va. League of Munici-

palities; W. Va. Bakers Association; W. Va. Dairy Products Association; and numerous civic organizations throughout the state which are listed by name; and that, as a consequence, the proposal received the most extensive advance publication a proposed constitutional amendment has ever received in this state by newspapers, magazines, radio, television, highway billboards, speeches before political, civic and other groups, and by the many thousands of leaflets, pamphlets, brochures and letters distributed throughout every part of the state.

There can be no doubt of the very extensive dissemination throughout the state of information concerning the proposal prior to the election held on November 3, 1964, in addition to the newspaper publications which were made pursuant to the constitutional requirement. We are not aware of any contention having been made by any person at any time, in this case or otherwise, that the voters were uninformed, misinformed or misled, or that any fraud was designed or that any fraud resulted in the ultimate submission of the proposed amendment to the voters for ratification or rejection.

The various aspects and implications of the question here presented for decision, with extensive reference to and discussion of pertinent legal principles and precedents are contained in the two majority opinions and in the dissenting opinion in the two prior decisions of this Court to which we have referred previously in this opinion. We deem it unnecessary to refer further to legal precedents or to discuss the questions here involved further than they have been referred to in those opinions and previously in this opinion.

We are fully conscious of the fact that this is a case of quite unusual importance, not merely as it relates to the economy of the state and its public highway system; but perhaps it is even more important because it is a case in which the Court is urged to extend further than ever heretofore the principle of substantial compliance with a very important portion of the Constitution.

In considering and deciding the case, we are comforted

by an assurance and a belief that, as a matter of fact and actuality, information concerning the Better Roads Amendment, prior to November 3, 1964, was disseminated quite thoroughly; that the voters were not defrauded, uninformed, misinformed or misled concerning the proposed amendment before the date appointed for voting upon the question of its ratification or rejection; that the people actually did vote upon the question in substantial numbers and that the amendment was ratified decisively by the voters. We are reassured in this respect because of our recognition of the fundamental principle that, under our form of government, it is contemplated that, in the making of and in the amendment of Constitutions, the people are sovereign and supreme. In this case the people have had a voice and have clearly expressed their will through their representatives in the legislative branch of government, and particularly in the exercise of the right of franchise in the manner contemplated by the constitutional provision under consideration in this case. We do not, of course, mean that an expression of the will of the people through their legislative representatives and at the polls can lessen the import of Constitution, Article XIV, Section 2, or the importance of compliance with that constitutional requirement.

In *State ex rel. Morgan* v. *O'Brien, supra,* the Court used language which may well be construed as a caveat and as an admonition to public officials in the executive department who are charged with the solemn responsibility of complying with the constitutional requirement of publication with which we are concerned in this case. In that case the Court stated: "We realize that, notwithstanding the applicability of the substantial compliance rule, the case before us is a borderline case." At another place in the opinion the Court stated: "Perhaps it may be said that in making this decision we have gone as far as we should, and the question may be raised as to where shall the line be drawn."

The extension of the substantial compliance principle from time to time, in this case and in the two preceding decisions of this Court, must not be construed to mean that every dereliction in the performance of duties imposed on

public officials in this respect can be excused and regarded as of no consequence. The decision of this case should not be construed to mean that this Court, even as presently constituted, would, under a different state of facts, regard a delayed publication such as that in this case as a substantial compliance with the constitutional requirement. The very importance of this case, and the difficult constitutional question presented to the Court for decision by the delay of publication should serve as a solemn reminder of the devastating consequences which might in the future result from a failure to recognize the grave importance of the requirement of publication contained in the constitutional provision involved in this case.

Considering the facts and circumstances of this case in their entirety, the Court is of the opinion and accordingly the Court holds that there was a substantial compliance in this case with the requirement of Constitution, Article XIV, Section 2, relating to publication of proposed constitutional amendments; that the Better Roads Amendment was legally adopted; that Enrolled Senate Bill No. 30, enacted by the legislature on February 16, 1965, and made effective from passage is constitutional and valid; that the demurrer to the petition is overruled; and that therefore the writ of mandamus, as prayed for, is awarded.

*Writ awarded.*