STATE EX REL. APPALACHIAN POWER COMPANY

*v.*

DENZIL L. GAINER, *Auditor, Etc.*

(No. 12446)

and

STATE EX REL. THE CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF WEST VIRGINIA

*v.*

DENZIL L. GAINER, *Auditor, Etc.*

(No. 12461)

Submitted June 8, 1965.          Decided July 13, 1965.

742

*Robert E. Magnuson, Ernest K. James,* for relator Appalachian Power Co.

*A. Thomas Breit, Jackson, Kelly, Holt & O'Farrell, Homer A. Holt,* for relator C. & P. Telephone Co. of W. Va.

*C. Donald Robertson,* Attorney General, *Leo Catsonis, Philip J. Graziani,* Assistant Attorneys General, for respondent.

*Steptoe & Johnson, David C. Clovis,* for Quiet Dell Public Service District & Sun Valley Public Service District, amici curiae.

Calhoun, Judge:

This case involves two proceedings in mandamus which were instituted in this Court pursuant to its original jurisdiction in such cases. They involve similar factual situations and similar legal questions and consequently, by consent of all parties, they have been consolidated for purposes of argument and final decision by this Court.

The relators in the two mandamus proceedings seek to have the Court require the respondent, Honorable Denzil L. Gainer, in his official capacity as Auditor of the State of West Virginia, to honor requisitions of the state road commissioner and accordingly to draw state warrants for payment of expenses incurred by the relators, respectively, in moving portions of their public utility facilities in connection with the construction of certain federal-aid interstate highways. The basic question presented for decision is the constitutionality of Chapter 161, Acts of the Legislature, Regular Session, 1963, which authorizes payment by the state of items of expense such as those incurred by the two relators in this case.

The Chesapeake and Potomac Telephone Company of West Virginia, a corporation, is a public utility engaged in the transmission of messages by telephone. The state road commission directed that company to relocate portions of its facilities, which were located within an existing public highway right of way, in order to facilitate the construction of a federal-aid interstate highway known as Interstate No. 77. The telephone company entered into agreements with the state road commission by which the commission agreed to reimburse the telephone company for costs incurred by it in relocating its facilities, unless to do so would be held by this Court to be unconstitutional.

Statements of costs of relocation of facilities were delivered by the telephone company to the state road commission. They were audited and approved by the auditing department of the commission. The state road commissioner drew his requisition upon the respondent state auditor for issuance by him of a warrant for the payment to the telephone company of the amount of the statements, as audited and approved, in the aggregate sum of $39,301.87. The respondent state auditor refused to honor the requisition of the state road commissioner, and, in doing so, the respondent suggested possible grounds of unconstitutionality of the act of the legislature which authorized payment of such items. In such circumstances, The Chesapeake and Potomac Telephone Company of West Virginia instituted the proceeding in mandamus in this Court.

The case as it relates to Appalachian Power Company, an electric public utility corporation, arose in a similar manner in all respects except that the claim in the mandamus proceeding instituted by it is for the sum of $3,111.00.

An answer and a demurrer were filed in behalf of the respondent state auditor to each of the two mandamus petitions. No substantial dispute of facts is presented by the pleadings. The demurrer raises questions of constitutionality which will be referred to more specifically hereafter in this opinion.

The Congress of the United States, in enacting the Federal-Aid Highway Act of 1956, authorized the use of federal highway funds for payment of costs of the relocation of public utility facilities necessitated by the construction of federal-aid highways. The pertinent portions of the federal act, as amended, are as follows: "(a) When a state shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such costs in the same proportion as Federal funds are expended on the project. Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the state. * * *." 23 U.S.C.A., Section 123.

Chapter 161, Acts of the Legislature, Regular Session, 1963, amended Article 4, Chapter 17 of Code, 1931, as amended, by adding thereto a new section designated as Section 17-b, the constitutionality of which is in question in this case and which, in the interest of brevity, may be referred to hereafter in this opinion merely as Section 17-b. It is as follows:

> "Section 17-b. Relocation of Public Utility Lines to Accommodate Federal-Aid Highway Projects.— Whenever the state road commissioner shall determine that any public utility line or facility located upon, across or under any portion of a state highway shall be relocated in order to accommodate a

federal-aid interstate highway project, and upon such determination and due notice thereof, the public utility owning or operating such facility shall relocate the same in accordance with the order of the commissioner: *Provided, however,* That the cost of such relocation shall be paid out of the state road fund in all cases involving the interstate system where proportionate reimbursement of such cost shall be obtained by the state road commissioner from the United States pursuant to the 'Federal-Aid Highway Act of 1956' and all acts amendatory or supplementary thereto: *And provided further,* That the cost of any relocation of municipally-owned utility facilities and water or sanitary districts or authorities shall be paid out of state road funds in any case involving any federal-aid system where proportionate reimbursement of such cost shall be obtained by the state road commissioner from the United States.

"For the purposes of this section, the term, 'cost of relocation,' shall include the entire amount paid by such utility, exclusive of any right-of-way costs incurred by such utility, properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and salvage value derived from the old facility.

"The cost of relocating utility facilities, as defined herein, in connection with any federal-aid interstate highway project is hereby declared to be a cost of highway construction."

The demurrers filed in behalf of the respondent state auditor assert that Section 17-b violates three provisions of the Constitution of West Virginia as follows:

(1) Section 52 of Article VI which is, in part, as follows: "Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, and all other revenue derived from motor vehicles or motor fuels shall, * * * be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, * * * and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways."

(2) Section 39 of Article VI, which provides that the legislature "shall not pass local or special laws" in any of the situations therein enumerated, including "Laying out, opening, altering and working roads or highways, * * *." That same section contains the following additional provision: "The Legislature shall provide by general laws for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * *."

(3) Section 6 of Article X which is, in part, as follows: "The credit of the State shall not be granted to, or in the aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; * * *."

The case was submitted to the Court for decision on the mandamus petitions, the demurrers and answers to the petitions and upon briefs and oral arguments in behalf of all parties. In addition, *amici curiae* briefs in support of the constitutionality of Section 17-b were filed, by permission of the Court, in behalf of Quiet Dell Public Service District and Sun Valley Public Service District, public corporations organized pursuant to the provisions of Article 13A, Chapter 16, Code, 1931, as amended, for the purpose of constructing and operating water distribution systems in Harrison County, and in behalf of Monongahela Power Company, a public utility corporation engaged in the generation and distribution of electricity.

It is conceded by counsel for the respondent that mandamus is a proper remedy in this case. *State ex rel. Smith* v. *Kelly,* 149 W. Va. 381, pt. 1 syl., 141 S. E. 2d 142; *State ex rel. Lippert* v. *Gainer,* 146 W. Va. 840, 122 S. E. 2d 618; *State ex rel. Wheeling Downs Racing Association* v. *Perry,* 148 W. Va. 68, pt. 1 syl., 132 S. E. 2d 922; *State ex rel. West Virginia Board of Education* v. *Sims,* 139 W. Va. 802, 81 S. E. 2d 665.

A court has a duty to attempt to find a proper basis for upholding the validity of a legislative enactment when its

constitutionality is challenged in a legal proceeding pending before such court, but also a duty to declare such legislative enactment to be invalid when it is clearly unconstitutional. *State ex rel. Smith* v. *Kelly*, 149 W. Va. 381, pt. 2 syl., 141 S. E. 2d 142; *Nuckols* v. *Athey*, 149 W. Va. 40, pt. 1 syl., 138 S. E. 2d 344. Courts must use restraint in the exercise of their power to declare legislative acts to be unconstitutional. 16 Am. Jur. 2d, Constitutional Law, Section 175, page 399.

If a statute is susceptible of two constructions, one of which would render the statute valid and the other of which would render it invalid, a court must adopt the construction which upholds its constitutionality. Every reasonable construction must be resorted to by a court in order to sustain constitutionality and any doubt must be resolved in favor of the constitutionality of the legislative enactment in question. *State ex rel. Slatton* v. *Boles*, 147 W. Va. 674, 130 S. E. 2d 192; *Tweel* v. *West Virginia Racing Commission*, 138 W. Va. 531, pt. 8 syl., 76 S. E. 2d 874. Courts are not concerned with questions relating to the policy of a legislative enactment. Questions relating to policy are solely for the legislature. The general powers of the legislature are almost plenary. It can legislate on every subject not interdicted by the Constitution itself. In considering constitutional restraint, the negation of legislative power must appear beyond reasonable doubt. *State Road Commission* v. *The County Court of Kanawha County*, 112 W. Va. 98, 163 S. E. 815; *Farley* v. *Graney*, 146 W. Va. 22, 119 S. E. 2d 833.

As we have stated previously, it is contended in behalf of the respondent that Section 17-b is violative of Constitution, Article VI, Section 52, which is, in part, as follows: "Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, and all other revenue derived from motor vehicles or motor fuels shall, * * * be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, * * * and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways." On the other hand, it is contended in

behalf of the relators that reimbursements paid to public utilities for costs of relocating public utility facilities, pursuant to the requirements of Section 17-b, are proper parts of the cost of the construction, reconstruction, repair and maintenance of public highways and that such reimbursements constitute "the payment of obligations incurred" in such construction, reconstruction, repair and maintenance of public highways within the meaning of Constitution, Article VI, Section 52.

At the outset we recognize that the Federal-Aid Highway Act of 1956, as amended, provides for federal-aid highway construction upon a basis of unprecedented proportions. Implicit in that act are governmental concepts without precedent in relation to the subject matter of that legislation. Therefore, to some degree at least, we must approach a consideration of the questions presented for decision in this case in the light of the unprecedented situation.

This Court has held that a telephone company which previously occupied a public highway right of way under a franchise from a county court could be required to remove such facilities at its own expense in order to facilitate improvement of the highway. *County Court of Wyoming County* v. *White et al.,* 79 W. Va. 475, 91 S. E. 350. Substantially to the same effect, see *State ex rel. City of Benwood* v. *Benwood & McMechen Water Co.,* 94 W. Va. 724, 120 S. E. 918.

Meanwhile this Court has consistently recognized that the use by public utilities of public highways, streets or rights of way is a use thereof in the public interest and for public purposes. The first point of the syllabus of *Fox* v. *City of Hinton,* 84 W. Va. 239, 99 S. E. 478, is as follows: "In this State, on the acquisition of a public street by a city, the fee of the land remains in the landowner, and the city acquires an easement in the street for travel which includes every kind of travel and communication for the movement or transportation of persons or property which is reasonable and proper. It includes the use of all kinds of vehicles which can be introduced with reasonable regard for the safety and convenience of the public, and every other rea-

sonable means of transportation, transmission and movement beneath the surface of the ground, as well as upon or above it. It embraces the reasonable use of such street for wires of telegraph, telephone and electric light companies, and such other similar arrangements for communication or transportation as future invention may make desirable." In *Herold* v. *Hughes*, 141 W. Va. 182, 90 S. E. 2d 451, the first and third syllabus points are, respectively, as follows:

"A grant of an easement for public highway purposes embraces every reasonable method of travel, communication of intelligence, and transportation of property, including the method of transportation of natural gas by pipe lines constructed and maintained on or under the land over which the easement is created.

"The transportation of natural gas by a producer thereof to a public service company who sells and delivers the gas for public use, is transportation for a public purpose."

To the same effect, see *Maxwell* v. *Central District & Printing Telegraph Company,* 51 W. Va. 121, 41 S. E. 125, and *Lowther* v. *Bridgeman,* 57 W. Va. 306, 50 S. E. 410. See also *The Chesapeake and Potomac Telephone Company of West Virginia* v. *The City of Morgantown,* 144 W. Va. 149, 107 S. E. 2d 489, and Code, 1931, as amended, 17-16-6.

It appears, therefore, that this Court has held and that the legislature has recognized that use of a public highway, street, easement or right of way by a public utility is a proper use and a use in the public interest. The question here presented is whether the legislature, in a proper and legitimate exercise of the police power and in the light of the federal-aid highway construction program recently provided for by the Congress, may lawfully provide for reimbursement of public utilities for the cost of relocation of their facilities, properly located on a state highway right of way, when such relocation is necessitated by the furtherance of the interstate highway construction program. As the law is presently written, ninety percent of such reimbursement, arising in connection with federal-aid interstate highways,

will be paid from federal-aid funds and ten percent from the state public road fund.

The police power of the state is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. *Farley* v. *Graney*, 146 W. Va. 22, pt. 5 syl., 119 S. E. 2d 833; *Nulter* v. *State Road Commission*, pt. 2 syl., 119 W. Va. 312, 193 S. E. 549 (194 S. E. 270); *City of Huntington* v. *State Water Commission*, 137 W. Va. 786, pt. 3 syl., 73 S. E. 2d 833. The police power is difficult to define because it is so extensive, elastic and constantly evolving to meet the new and increasing demands for its exercise for the benefit of society. It embraces the power of the state to preserve and promote the public welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community. "The exercise of the police power cannot be circumscribed within narrow limits nor can it be confined to precedents resting on conditions of the past. As civilization becomes more complex and advancements are made, the police power of necessity must develop and expand to meet such conditions." *Farley* v. *Graney*, 146 W. Va. 22, 36, 119 S. E. 2d 833, 842.

Section 17-b contains a legislative declaration as follows: "The cost of relocating utility facilities, as defined herein, in connection with any federal-aid interstate highway project is hereby declared to be *a cost of highway construction*." (Italics supplied.) "A legislative declaration of fact should be accepted by the courts unless there is strong reason for rejecting it." *Glover* v. *Sims*, 121 W. Va. 407, pt. 1 syl., 3 S. E. 2d 612. "A legislative declaration of fact, if not arbitrary, is final." *Lemon* v. *Rumsey*, 108 W. Va. 242, pt. 4 syl., 150 S. E. 725. "A fact once determined by the Legislature, and made the basis of an act, is not thereafter open to judicial investigation." *Woodall* v. *Darst*, 71 W. Va. 350, pt. 7 syl., 77 S. E. 264. A legislative determination of what is a public purpose will not be interfered with by the courts unless the judicial mind conceives it to be without reasonable relation to the public interest. *State ex rel. County Court of Marion County* v. *Demus*, 148 W. Va. 398.

135 S. E. 2d 352, 358. "Since the determination of questions of fact on which the constitutionality of statutes may depend is primarily for the legislature, the general rule is that the courts will acquiesce in the legislative decision unless it is clearly erroneous, arbitrary, or wholly unwarranted. Whenever the determination by the legislature is in reference to open or debatable questions concerning which there is a reasonable ground for difference of opinion, and there is probably basis for sustaining the conclusion reached, its findings are not subject to judicial review." 16 Am. Jur. 2d, Constitutional Law, Section 171, page 388. See also 4 M. J., Constitutional Law, Section 55, page 145. We are of the opinion that we must accord peculiar weight to the legislative declaration in Section 17-b that the cost of relocating utility facilities is a cost of highway construction.

For a comprehensive annotation of the subject of the constitutionality of state statutes similar to Section 17-b, dealing with reimbursement of public utilities for cost of relocation of their facilities in connection with public highway construction, see 75 A.L.R. 2d 419.

In *Opinion of the Justices,* 101 N. H. 527, 132 A. 2d 613, 616, the decision of the precise question presented under an act similar to our own, was stated as follows: "* * * The relocation of utility facilities is an integral part of highway improvements. The Legislature, if it chooses to do so, may validly declare that the relocation of utility facilities is part of the cost of highway relocation and reconstruction and shall be paid out of highway funds." In the same opinion, the court stated (132 A. 2d 614): "While the obligation to remove or relocate utility facilities is placed on the owner by the common law, the legislature may change this rule." The same principle was stated in *Opinion of the Justices,* 152 Me. 449, 132 A. 2d 440, 443, as follows: "At common law there is no obligation to pay for the removal or relocation of public utility facilities required by changes in highways. * * * The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. The purpose of such expenditures is public in nature, and the extent and conditions under which the State may meet

such costs are for the Legislature to determine." *State* v. *City of Austin*, 160 Tex. 348, 331 S. W. 2d 737, involved the constitutionality of a statute similar to Section 17-b in the light of a constitutional provision similar to Section 52 of Article VI of the Constitution of this state. In upholding the constitutionality of the statute, the court stated (331 S. W. 2d 747): "It has already been pointed out that the use of public ways for the installation of utility lines and mains is one of the proper and common purposes to which roads and streets are necessarily devoted, although their principal and primary use is for travel and transportation. The relocation of such facilities is made necessary by and is an integral part of the highway improvement program. If the Legislature determines, as it has in this instance, that the non-betterment cost thereof should be paid by the state, it is our opinion that the same is properly attributable to highway construction within the meaning of the Constitution." In holding a similar statute to be constitutional in the light of a similar constitutional provision, the court made the following statement in *Minneapolis Gas Co.* v. *Zimmerman*, 253 Minn. 164, 91 N. W. 2d 642, 649: "In view of the fact that the transmission of utility services is one of the general and primary purposes for which highways are designed, it would be unrealistic to construe the broad language of the Minn. Const. art. 16, sections 2 and 6, so narrowly as to prohibit the legislature from authorizing the use of highway funds for the nonbetterment location of utility services as a proper cost of highway construction, reconstruction, improvement, and maintenance. It would be unreasonable to hold that the proceeds of the highway fund may not be expended for whatever is reasonably necessary to the complete accomplishment of all the basic purposes for which a highway exists." In *Edge* v. *Brice*, 253 Iowa 710, 113 N. W. 2d 755, 759-60, in upholding the validity of a similar statute in the light of a similar constitutional provision, the court stated: "It is fair to say that the intent of the term 'construction' as used in the amendment includes all things necessary to the completed accomplishment of a highway for all uses properly a part thereof. The use by utilities is such a use and payment of the relocation costs as

contemplated in chapter 205 does not violate the antidiversion amendment." A similar question was considered in *Jones v. Burns,* 138 Mont. 268, 357 P. 2d 22. In that case the court made an exhaustive review of precedents and pointed out that it has been held "time and time again" that a state legislature may change the common law by providing "for reimbursement to utility companies when they are required to remove their facilities from public ways by an exercise of the state's police power." In holding that the statute providing for reimbursement of utilities in such circumstances did not violate an antidiversion provision of the state constitution, the court used the following reasoning (page 29, 357 P. 2d): "In the instant case, neither the utilities, their users, their stockholders nor cooperatively owned utilities or their members, will receive any direct and substantial benefit from relocation of the utilities' facilities. It cannot be contended that the relocation will make the service to the users any better, or reduce their rates, or provide any more income for the company. The purpose behind requiring relocation of existing facilities is to provide the traveling public with wider, straighter, and better highways. It is only equitable that the state should place the burden of relocating existing utility facilities on those who will derive the benefit therefrom." In upholding a statute similar to Section 17-b, in the light of a constitutional road fund antidiversion provision almost identical to our own, in *Northwestern Bell Telephone Company* v. *Wentz,* ____ N. D. ____, 103 N. W. 2d 245, 255, the court stated: "It appears to us that by legislative enactment such payment when ordered pursuant to the reimbursement statute constitutes a 'payment of obligations incurred in the construction, * * * of public highways.'"

This Court has had occasion to consider Constitution, Article VI, Section 52, which creates the state constitutional road fund, in a quite limited number of cases. In *State ex rel. State Road Commission* v. *O'Brien,* 140 W. Va. 114, 82 S. E. 2d 903, the Court declined to give a technically restrictive construction to the constitutional provision. In that case it was held that the legislature could lawfully and constitutionally pledge monies from the constitutional road

fund to payment of the principal of and interest on bonds for payment of a portion of the cost of construction of a bridge on a public highway on a federal matching fund basis. Thereafter, in *Charleston Transit Company v. Condry,* 140 W. Va. 651, 659, 86 S. E. 2d 391, 397, the Court stated: "We think that the purpose of the people of this state in adopting Section 52, Article VI of the Constitution, was to prevent the diversion by the legislature of funds derived from the sources named in the constitutional provision to purposes other than the construction, reconstruction, repair and maintenance of public highways; and the payment of interest and principal on road bonds theretofore or thereafter issued." It is evident, therefore, that the Court heretofore has construed the Constitution to mean that the provision creating the road fund contemplates more than actual construction, reconstruction or repair of public highways in a strict sense of such terms.

Code, 1931, 17-1-3, as amended and reenacted by Chapter 160, Acts of the Legislature, Regular Session, 1963, provides that the terms "road," "public road" and "highway" shall be deemed to include, "but shall not be limited to," the right of way, roadbed, and all necessary culverts, sluices, drains, ditches, waterways, embankments, slopes, retaining walls, bridges, tunnels and viaducts. No doubt it must be recognized that such terms would embrace additional items which are deemed usual and necessary parts of highway construction such, for instance, as guardrails, traffic signals and mulching and seeding of cuts and fills.

It is clear that, under the common law and but for the provisions of Section 17-b, public utilities could be required, at their own expense, to move their facilities from public streets or public highway rights of way when required to do so by proper public authorities in order to facilitate the relocation, reconstruction or improvement of the public ways on which such public utility facilities were previously located. It does not necessarily follow from that proposition, however, that the legislature, in a proper exercise of its vast reservoir of police power, may not lawfully and constitutionally provide for reimbursement to be paid by the

state to the utilities for relocation of such facilities when such relocation is rendered essential to the vast present day program of highway construction, reconstruction, repair and improvement.

In the light of the authorities previously cited, and in the light of that which we conceive to be the distinct weight of authority among appellate courts which have considered the question, we believe and, accordingly the Court holds, that the legislature properly and lawfully exercised the police power in providing, in Section 17-b, that the cost of relocating public utility facilities in connection with federal-aid highway projects may be paid from the constitutional state road fund and that the statute in this respect is not in violation of Constitution, Article VI, Section 52. We are of the opinion that reimbursement of the utilities for the cost of relocation of their facilities constitutes "the payment of obligations incurred" in the construction of public highways. In this connection, we consider pertinent also the authorities which will be referred to hereafter in this opinion dealing with the public nature of expenditures for reimbursement of public utilities, in accordance with Section 17-b, as such reimbursements relate to Constitution, Article X, Section 6.

In a case decided only a few months ago, the Supreme Court of Tennessee, after an extensive review of numerous pertinent decisions of other state appellate courts, upheld the constitutionality of a statute similar to Section 17-b. *Pack* v. *Southern Bell Telephone & Telegraph Company* (Tenn. 1965), 387 S. W. 2d 789. In holding that reimbursement made by the state to public utilities for cost of removal of their facilities was in the public interest and for a public purpose, the court stated (387 S. W. 2d 793): "Utilities are an integral part of the full use of the public rights-of-way, all serving the public interest, and in their removal and relocation the public has a real and legitimate interest. Such being the case, the relocation of the utilities as contemplated by Chapter 368 is in furtherance of a public purpose." To the same effect, see *Opinion of the Justices*, 101 N. H. 527, 132 A. 2d 613; *Minneapolis Gas Co.* v. *Zimmer-*

*man,* 253 Minn. 164, 91 N. W. 2d 642; *State Road Commission of Utah* v. *Utah Power & Light Co.,* 10 Utah 2d 333, 353 P. 2d 171; *State* v. *City of Austin,* 160 Tex. 348, 331 S. W. 2d 737; *State Highway Department* v. *Delaware Power & Light Co.,* 39 Del. Ch. 467, 167 A. 2d 27; *Jones* v. *Burns,* 138 Mont. 268, 357 P. 2d 22; *Opinion of the Justices,* 152 Me. 449, 132 A. 2d 440. We are of the opinion that relocation of utility facilities in connection with public highway construction or improvement is in the public interest and that reimbursement pursuant to Section 17-b is for a public purpose.

It is further contended in behalf of the respondent that the second proviso contained in Section 17-b violates Constitution, Article VI, Section 39, which provides that "in no case shall a special act be passed, where a general law would be proper, * * *." The earlier portion of Section 17-b deals with "any public utility line or facility" and is confined to relocation of facilities in order to accommodate "a federal-aid interstate highway project." That is, the portion of Section 17-b which precedes the second proviso provides for reimbursement to be paid to *any* public utility, but only as to federal-aid *interstate* highway projects. The second proviso authorizes reimbursement of "municipally-owned utility facilities and water or sanitary districts or authorities" from state road funds in any case involving "*any* federal-aid system." (Italics supplied.) In case of a federal-aid highway which is not interstate, the state's financial contribution is proportionately greater and the federal contribution is proportionately less than in case of an interstate highway.

The effect of Section 17-b is that *all* public utilities are placed in a single category so far as federal-aid *interstate* projects are concerned; but only municipally-owned utility facilities and water or sanitary districts or authorities may be reimbursed in connection with highways which are not a part of the interstate system. It is contended in behalf of the respondent that the second proviso, therefore, constitutes special legislation which discriminates in favor of utilities which fall into the category created by the language of that proviso.

Water or sanitary districts or authorities, referred to in the second proviso of Section 17-b, are created and authorized by Article 13A of Chapter 16, Code, 1931, as amended. Their creation and operation are authorized by issuance of revenue bonds payable from revenues. *State* v. *Stahl*, 141 W. Va. 233, 89 S. E. 2d 693. It is evident, therefore, that the second proviso relates to utilities which are owned publicly in a sense not applicable to private utilities such as the relators in this case.

In recognition of fundamental and constitutional principles relating to separation of powers in government, courts have recognized that the necessity for and reasonableness of classifications for purposes of legislation in the exercise of the police power are primarily questions for the legislature and, if any state of facts can be reasonably conceived to support the classification, such classification is binding on the courts. The presumption is that the classification is reasonable and appropriate and that the legislative enactment in question, in that respect, must be held to be constitutional. "If the statute passed by the Legislature applies throughout the State and to all persons within a specified class, and such classification is rational and is not arbitrary or unreasonable, the statute is general." *State ex rel. Heck's, Inc.* v. *Gates*, 149 W. Va. 421, pt. 9 syl., 141 S. E. 2d 369. See also *State ex rel. Dieringer* v. *Bachman*, 131 W. Va. 562, 48 S. E. 2d 420. A very wide discretion must be conceded to the legislative power in classification of trades, callings, businesses or occupations for purposes of legislative regulation. *Tweel* v. *West Virginia Racing Commission et al.*, 138 W. Va. 531, pt. 5 syl., 76 S. E. 2d 874. "So long as a law operates alike on all persons and property similarly situated, it is not subject to the objections of special or class legislation, nor is it in violation of the federal guaranty as to the equal protection of the laws." *Bent* v. *Weaver*, 108 W. Va. 299, pt. 2 syl., 150 S. E. 738. In any case of doubt, courts must favor a construction of a statute which will result in the law being regarded as general rather than special. *State ex rel. Rickey* v. *Sims*, 122 W. Va. 29, 7 S. E. 2d 54. Constitutional prohibitions against special legislation do not prohibit classification but the classifications

created must merely be natural, reasonable and appropriate. *Mandell* v. *Haddon,* 202 Va. 979, 121 S. E. 2d 516. "A state statute is a general law when it operates uniformly on all persons and things of a class." *State ex rel. Plymale* v. *City of Huntington,* 147 W. Va. 728, pt. 3 syl., 131 S. E. 2d 160. See also *State ex rel. County Court of Cabell County* v. *Battle,* 147 W. Va. 841, 131 S. E. 2d 730. "A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." *McEldowney* v. *Wyatt,* 44 W. Va. 711, pt. 1 syl., 30 S. E. 239. See also *Elite Laundry Co.* v. *Dunn,* 126 W. Va. 858, 864, 30 S. E. 2d 454, 458. "A special law is one which relates to particular persons or things, or to particular persons or things of a class, or which operates on or over a portion of a class instead of all the class." 82 C. J. S., Statutes, Section 166, page 279. Whether a general or special law is proper is generally a matter for legislative determination. *Brozka* v. *County Court of Brooke County,* 111 W. Va. 191, 195, 160 S. E. 914, 916. The test of constitutionality is whether the classification is capricious, unreasonable or arbitrary. *Pack* v. *Southern Bell Telephone & Telegraph Co.* (Tenn., 1965), 387 S. W. 2d 789, 796.

The second proviso of Section 17-b cannot be deemed special legislation merely because it does not operate alike upon all public utilities. Legislation may properly operate differently upon railroads, bus companies, motor carriers or upon gas or electric utilities, if classifications have reasonable basis and are not made unreasonably or arbitrarily. A legislative classification cannot be held by a court to be invalid unless it is devoid of reason, arbitrary or unreasonable. In that area, a court cannot substitute its judgment for that of the legislature. Courts cannot be concerned with legislative policy or the mere wisdom or lack of wisdom of the statute in question. We cannot say that the classifications made by the legislature in Section 17-b are irrational, arbitrary or unreasonable. *State ex rel. Heck's, Inc.* v. *Gates,* 149 W. Va. 421, pt. 9 syl., 141 S. E. 2d 369. Therefore, the Court holds that Section 17-b is not violative of Constitution, Article VI, Section 39.

Finally, it is urged in behalf of the respondent that Section 17-b is violative of Constitution, Article X, Section 6, which contains the following provision: "The credit of the state shall not be granted to, or in aid of any county, city, township, corporation or person; * * *." This provision was inserted in the Constitution primarily to prevent the practice which obtained earlier in Virginia of lending the state's credit to counties or to private internal development projects such as railroads, canals, toll roads and turnpikes. The provision is sufficiently broad, however, to inhibit the state from granting its credit or assuming debts in additional instances. 67 W. Va. L. Rev. page 230; *State ex rel. Dyer* v. *Sims,* 134 W. Va. 278, 289, 58 S. E. 2d 766, 772-73; *Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896.

In *Glover* v. *Sims,* 121 W. Va. 407, 3 S. E. 2d 612, there was considered a legislative appropriation to pay certain claims arising directly or indirectly from the construction of the West Virginia University Stadium by a private organization known as West Virginia University Stadium Corporation. It was held that the legislative appropriation was not violative of Constitution, Article X, Section 6, for the reason that the appropriation was based on "simple justice and right." *State ex rel. Roth* v. *Sims,* 139 W. Va. 795, 81 S. E. 2d 670, involved payment of public funds by the state director of public assistance to enable a state employee to study at the University of North Carolina in certain technical and specialized fields relating to child welfare. In holding that such an expenditure was not unconstitutional as an expenditure of public funds for private purposes, the Court stated (139 W. Va. 799, 81 S. E. 2d 673): "It is true, of course, that the employee will receive a special benefit from the expenditure. That, however, is not the test. We have no difficulty in finding that the funds are to be expended for a public purpose." In *State ex rel. West Virginia Board of Education* v. *Sims,* 139 W. Va. 802, 81 S. E. 2d 665, the Court held that the granting of sabbatical leaves to faculty members of state educational institutions, pursuant to an act of the legislature, to engage in graduate study and research to improve their teaching ability and the payment of public funds to such persons for that purpose were

not violative of Constitution, Article X, Section 6. The Court held that expenditure of public funds in such circumstances was "for a public purpose," notwithstanding the incidental personal benefit to the individuals receiving such sabbatical leaves. See also *Kenny* v. *County Court of Webster County,* 124 W. Va. 519, 527, 21 S. E. 2d 385, 389.

We believe the contention that Section 17-b violates Constitution, Article X, Section 6, is effectively answered by our holdings, previously stated in this opinion; that the expenditures of public funds involved in this case are in the public interest, for public purposes; and that reimbursements asserted by the relators in this case may be paid from the state road fund. We therefore hold that Section 17-b is not violative of Constitution, Article X, Section 6. We believe our holding in this respect is sustained by the following cases which dealt with statutes similar to Section 17-b: *Edge* v. *Brice,* 253 Iowa 710, 113 N. W. 2d 755; *Minneapolis Gas Co.* v. *Zimmerman,* 253 Minn. 164, 91 N. W. 2d 642; *State ex rel. City of Albuquerque* v. *Lavender,* 69 N. M. 220, 365 P. 2d 652; *State* v. *City of Austin,* 160 Tex. 348, 331 S. W. 2d 737; *State Road Commission* v. *Utah Power & Light Co.,* 10 Utah 2d 333, 353 P. 2d 171.

The statute here in question provides that the cost of the relocation "shall" be paid out of the state road fund. We believe, therefore, that the duty imposed on the respondent is mandatory.

For reasons stated in this opinion Section 17-b is held to be constitutional and the writs of mandamus as prayed for are awarded.

*Writs awarded.*