STATE *ex rel.* WEST VIRGINIA COMMISSION ON
INTERSTATE COOPERATION, *et al.*

*v.*

EDGAR B. SIMS, *Auditor, etc.*

(No. 10327)

Submitted January 10, 1951. Decided February 6, 1951.

*William C. Marland,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, for petitioners.

*Mohler, Peters & Snyder,* for respondent.

FOX, PRESIDENT:

This petition for a writ of mandamus to compel the defendant, Edgar B. Sims, Auditor, to honor a requisition drawn on him by the West Virginia Commission on Interstate Cooperation, in favor of the Council of State Governments, in the sum of $6,000.00, was filed in this Court on September 19, 1950, and a rule to show cause

why the writ should not issue was awarded on September 25, 1950, and was argued by counsel at the present term. The questions involved will appear from the statement which follows.

By Chapter 39, Acts of the Legislature, 1937, the Legislature of this State created the West Virginia Commission on Interstate Cooperation. By Section 1 of the same Act, there was first created the Senate Committee on Interstate Cooperation, to consist of five senators, and providing that the president of the senate should be ex officio an honorary non-voting member of the committee. By Section 2 of said Act, there was created the House Committee on Interstate Cooperation to consist of five members of the House of Delegates, with the provision that the speaker of the House of Delegates should be ex officio an honorary non-voting member of the committee. By Section 3 of said Act, there was created the Governor's Committee on Interstate Cooperation to consist of the budget director or the corresponding official of this State, **ex officio**; the attorney general, ex officio; and three other administrative officials or employees to be designated by the governor, with power in the governor to appoint one of the five members of said committee as its chairman. It is also provided that in addition to the regular members, the governor should be ex officio an honorary non-voting member thereof. Then follows Section 4 of said Act which reads:

"There is hereby established the West Virginia commission on interstate cooperation. This commission shall be composed of fifteen regular members, namely:

"The five members of the senate committee on interstate cooperation;

"The five members of the house committee on interstate cooperation; and

"The five members of the governor's committee on interstate cooperation.

"The governor, the president of the senate and the speaker of the house of delegates shall be ex

officio honorary non-voting members of this commission. The chairman of the governor's committee on interstate cooperation shall be ex officio chairman of this commission."

It is alleged in the petition, filed as aforesaid, that Carl M. Frasure is chairman of the Governor's Committee on Interstate Cooperation.

By Section 6 of the said Act, the functions of the West Virginia Commission on Interstate Cooperation are defined as follows:

"(1) To carry forward the participation of this state as a member of the council of state governments.

"(2) To encourage and assist the legislative, executive, administrative and judicial officials and employees of this state to develop and maintain friendly contact by correspondence, by conference, and otherwise, with officials and employees of the other states of the federal government, and of local units of government.

"(3) To endeavor to advance cooperation between this state and other units of government whenever it seems advisable to do so by formulating proposals for, and by facilitating:

"(a) The adoption of compacts,

"(b) The enactment of uniform or reciprocal statutes,

"(c) The adoption of uniform or reciprocal administrative rules and regulations,

"(d) The informal cooperation of governmental offices with one another,

"(e) The personal cooperation of governmental officials and employees with one another, individually,

"(f) The institution and consummation of a federal long-range program of flood control, meeting the requirements of the federal flood control acts of one thousand nine hundred thirty-six or other acts of congress relative thereto,

" (g) The interchange and clearance of research and information, and

" (h) Any other suitable process.

" (4) In short, to do all such acts as will, in the opinion of this commission, enable this state to do its part, or more than its part, in forming a more perfect union among the various governments in the United States and in developing the council of state governments for that purpose."

In enacting Chapter 39, Acts of 1937, the Legislature seemed clearly to contemplate that the West Virginia Commission on Interstate Cooperation should act with other like organizations created in the states of the union. It is alleged in relator's petition that there is now in existence an organization termed the Council of State Governments, the purpose of which is to carry out, in general, the theory of uniform action, in various fields, on the part of the states. It is unnecessary to deal at length with the powers of this Federal organization. It is only necessary to say that it is calculated to promote the purposes which the Legislature of this State had in mind when it enacted Section 6 of Chapter 39, as indicated above; and in carrying out its original purpose, the Legislature exercised its discretion by authorizing membership on the part of this State in the Council of State Governments.

The Legislature, at its 1949 Session, appropriated for the fiscal year beginning July 1, 1950, the sum of $8,500.00 for the Commission on Interstate Cooperation, with this provision attached thereto: "Out of the above appropriation the sum of $6,000.00 may be made available for West Virginia's membership in the council of state governments." On July 14, 1950, Carl M. Frasure, Chairman of the Commission on Interstate Cooperation, submitted to Edgar B. Sims a requisition for the sum of $6,000.00 in favor of said Council of State Governments, in accordance with the appropriation for that purpose. The auditor refused to honor such requisition and explained his reason for such refusal by letter, dated August 2, 1950,

and directed to the West Virginia Commission on Interstate Cooperation. By reason of such refusal this proceeding followed.

There is no question of fact involved. The respondent interposed his demurrer to the petition filed which, of course, admits the truth of the allegations contained in said petition. Respondent also filed his answer in which he does not deny any of the allegations of the petition, and expressly admits most of them. The position of the respondent is that the Act of 1937 is unconstitutional and void because it improperly delegates to the said committees and the commission powers which only the Legislature can directly exercise, and the particular objection seems to be that it delegates a part of the police powers of the State. This question was dealt with in the recent case of *Dyer* v. *Sims,* 134 W. Va. 278, 58 S. E. 2d 756, wherein the views of this Court are expressed on matters in connection with the police powers of the State.

It is not necessary to cite authorities for the proposition that the appropriation of public funds rests, under our Constitution, in the Legislature. If an appropriation be for a public purpose, and not in conflict with any provision of the Constitution of the State, we know of no authority which, in the absence of a showing of fraud in its procurement, the courts may exercise to nullify the same. The fact that an appropriation may be an unwise one cannot be considered by the courts. Only the question of power is involved when an appropriation is attempted to be tested in the courts.

In *Dyer* v. *Sims, supra,* we held that the Legislature did not possess the power to delegate, in perpetuity, any part of the police powers of the State, and to that position we adhere. But we find nothing in the Act creating the West Virginia Commission on Interstate Cooperation which delegates to it any part of the police powers of the State. The functions of said commission, as defined by Section 6 of the Act, grant no power whatever to bind the State or the Legislature, and goes no further than to authorize

investigation, correspondence and planning which, without action of the Legislature, or some other authorized department of the State government, would have no legal force, and would amount to no more than a recommendation. Nor does the Act bind future Legislatures to make a like appropriation in any sum. The powers granted seem only to provide and call for suggestions as to the adoption of compacts between the states; the enactment of uniform or reciprocal statutes; the adoption of uniform or reciprocal rules and regulations. The point is that no power to make any rule or regulation or agreement effective is vested in this commission. This being true, there cannot possibly be any grant of the police powers of the State. Everything this commission is authorized to do must pass the test of legislative approval or disapproval; and so long as the situation is such, there has been no delegation of legislative power. Therefore, this Court would not be warranted in interfering with the exercise of legislative power and discretion in this appropriation of public money which is clearly defined for a public purpose. If the Legislature, in making said appropriation, acted within its legitimate powers, as we think it did, then it was the plain legal duty of the auditor to honor the requisition which was drawn upon him for the $6,000.00 expressly authorized to be paid for membership in the Council of State Governments.

It is contended by the respondent that there was no proper itemized account filed as the basis for the requisition here involved. Code, 12-3-10, does require an itemization of accounts presented for payment to the State auditor, and that being a useful provision of the statute, should be given a strict construction. However, we cannot see that there has been any failure on the part of the petitioner in connection with itemization for the purpose of obtaining the requisition aforesaid. There need be no itemization where there is a single purpose and a single act to be provided for. Here the requisition was to cover a single item, membership of this State in the Council of State Governments. Presumably this entitled this State

to the benefits, if any, which might result from such membership. Surely it was not necessary to itemize the expenditures of the Council of State Governments. There being a single purpose, and that purpose being plainly stated in the requisition, we cannot see that it was necessary to go further. We dealt with this subject in *State ex rel. City of Charleston* v. *Sims,* 132 W. Va. 826, 54 S. E. 2d 729.

The Legislature having acted within its legitimate powers in making the appropriation for membership in the Council of State Governments, it was the plain duty of the auditor to make such appropriation effective by honoring the requisition drawn upon him by the Chairman of the West Virginia Commission on Interstate Cooperation. "A peremptory writ of mandamus will issue to require the discharge by a public official of a nondiscretionary duty." *Glover* v. *Sims,* 121 W. Va. 407, 3 S. E. 2d 612; *State ex rel. The West Virginia Board of Aeronautics* v. *Sims,* 129 W. Va. 694, 41 S. E. 2d 506. It follows, therefore, that the writ prayed for is awarded.

*Writo awarded.*