STATE *ex rel.* ROBERT VINCENT

*v.*

DENZIL GAINER,
AUDITOR OF THE STATE OF WEST VIRGINIA

(No. 12691)

Submitted September 27, 1967. Decided December 12, 1967.

*Louis G. Craig,* for relator.

*C. Donald Robertson,* Attorney General, *Leo Catsonis,* Assistant Attorney General, for respondent.

BERRY, JUDGE:

This is a proceeding in mandamus instituted under the original jurisdiction of this Court in which Robert Vincent seeks a writ of mandamus against Denzil L. Gainer, Auditor of the State of West Virginia, to compel him to honor a requisition in the amount of $15,000 from the State Road Commission and issue his warrant on the State Treasurer in favor of the relator in that amount. Some months before, there had been a hearing before the Claims Division of the Office of the Attorney General of West Virginia at which time the Attorney General found that the State Road Commission was guilty of negligence in con-

nection with an accident which occurred on U.S. (W. Va.) Route 33 in Lewis County on Buckhannon Mountain on March 1, 1966, and recommended declaration of a moral obligation on the part of the State by the State Legislature and an appropriation of money to pay the claim. Based on this recommendation the Legislature declared a moral obligation on the part of the State to pay the relator the sum of $15,000, and an appropriation was made by the Legislature for the payment of same. Chapter 18, Acts of the 1967 Legislature, Regular Session. The requisition was then issued by the State Road Commission.

After the Auditor refused to honor the requisition issued by the State Road Commission the relator instituted this proceeding in this Court and rule was issued returnable September 26, 1967, requiring the Auditor to show cause why he should not honor the requisition and issue his warrant for the payment thereof. On the return date of said rule the case was submitted on arguments and briefs for the decision of this Court.

The claim in question arose out of an automobile accident when a 1959 Cadillac automobile owned by the relator's wife, Anna Lee Vincent, collided with a large boulder which slid onto the road, and the accident demolished her car, killing his wife and severely injuring him and two of his three daughters who were riding with him in the car at the time of the accident. The relator lived at Jane Lew, West Virginia, where he operated a funeral home and he was returning to his home when the accident occurred about 8 o'clock p.m. on Buckhannon Mountain in Lewis County, about 9½ miles from Buckhannon, West Virginia. At the time of the accident the road was dry, straight and the weather conditions clear. The car was being driven about 45 miles an hour at the time in a 55 mile an hour speed zone. The huge boulder fell immediately in front of it and it appears that employees of the State Road Commission had removed a

boulder from almost the same place this accident occurred on the day before and offices of the State Road Commission were located within a few miles of the scene of the accident.

According to the testimony presented at the hearing before the Claims Division complaints had been made to the State Road Commission concerning the danger of this particular portion of the road relative to large boulders falling in the road and no protection against falling rocks had been provided nor had any warning signs been erected at any time. The relator testified at this hearing that the rocks on the hillside were visible and had been observed while he and his family were passing the scene earlier on the day of the accident and comments made about the rocks on the bank. The only evidence introduced before the hearing by the Claims Division of the Attorney General's Office was that of the relator and there was no denial of this evidence made by the State Road Commission.

The relator's wife who was killed had assisted him in the funeral home business and by virtue of her death and his injuries there was no one to take care of the business for quite some time, and thus considerable money was lost. The relator filed a claim for $25,000 covering all personal and property claims and the Attorney General, after finding negligence on the part of agents of the State and determining a moral obligation of the State, recommended that $15,000 be paid to the relator, which, as heretofore stated, was done by an appropriation made by an Act of the Legislature. There is not much doubt about the seriousness of the personal injuries to the survivors of the wreck, such as head, back, leg and assorted contusions, the death of one person, and the total wrecking of the car, so that the amount of the appropriation can be sustained by the evidence.

Although the State did not contest this claim in any manner at the hearing before the Claims Division where it was found that the relator had proved a case

of prima facie neglience which was not rebutted and therefore complied with the rule justifying the finding of a moral obligation on the part of the State, the entire matter is vigorously contested by the Auditor, the respondent herein, who filed both a demurrer and answer. The demurrer is to the effect that the facts in this case did not establish a moral obligation against the State, that the question involved is a judicial, not a legislative, function, and that the respondent, acting under the provisions of Code, 12-3-1, as amended, cannot be compelled to issue the warrant by mandamus proceeding. The answer admits that it is the respondent's duties as Auditor of the State of West Virginia to honor valid requests for payments of legal obligations incurred by the State of West Virginia or its agents but asserts that the mere fact that the Legislature made an appropriation for the payment of the claim does not within itself make it a valid and legal claim; that Code, 12-3-1, as amended, imposes a duty upon the respondent to examine the claim and examine the evidence offered in support thereof and ascertain if the claim is justly due from the State and authorized by law, and denies that he arbitrarily refused to issue the warrant in payment of the claim but says that said refusal is predicated upon the law dealing therewith. The Auditor in discharge of his duties as prescribed by law has the right to raise the question of constitutionality of an appropriation of the Legislature in a mandamus proceeding. *Woodall v. Darst,* 71 W. Va. 350, 77 S.E. 264, 44 L.R.A. (N.S.) ; *State ex rel. Board of Governors of West Virginia University v. Sims,* 140 W. Va. 64, 82 S.E. 2d 321.

This question was clearly stated in Point 2 of the syllabus in the *Woodall* case, which reads as follows: ''In a mandamus proceeding to compel the State Auditor to draw his warrant upon the Treasurer in favor of a person to whom the Legislature has appropriated money, the Auditor has the right to raise the constitutionality of the appropriation either by demurer

and motion to quash the alternative writ, or by answer.'' Ultimately this question is one for judicial determination. *Woodall v. Darst, supra; State ex rel. Board of Governors of West Virginia University v. Sims, supra.*

It was held many years ago that the Legislature had the power to appropriate public funds in certain cases which were warranted by simple justice and right without violating the provisions of the Constitution, Article VI, Section 38, relative to unauthorized contracts. *Slack v. Jacob,* 8 W. Va. 612. Such claims which the Legislature was justified in appropriating money for the payment thereof have been classified as moral obligations and the case of *State ex rel. Cashman v. Sims,* 130 W. Va. 430, 43 S.E. 2d 805, 172 A.L.R. 1389, in point 4 of the syllabus clearly states the rule followed in such matters in the language quoted below:

''To constitute a valid declaration by the Legislature of the existence of a moral obligation of the State for the discharge of which there may be an appropriation of public funds in the interest of the public welfare, it is necessary, as a general rule, that there be an obligation or a duty, by prior statute created or imposed upon the State, to compensate a person for injury or damage sustained by him by reason of its violation by the State or any of its agencies, or to compensate him for injury, damage or loss incurred by him in or by his performance of any act authorized or required by such statute; or an obligation or a duty, legal or equitable, not imposed by statute, but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons.''.

It is well settled that if employees of a state agency are guilty of negligence which would be judicially recognized as a ground for legal recovery for damages in cases between private parties such negligence would

constitute a moral obligation on the part of the state warranting the Legislature to appropriate money for the payment of damages to satisfy such moral obligation. *State ex rel. Catron v. Sims*, 133 W. Va. 610, 57 S. E. 2d 465; *State ex rel. Utterback v. Sims*, 136 W. Va. 822, 68 S.E. 2d 678; *Weekley v. Sims, Auditor*, 139 W. Va. 263, 79 S.E. 2d 847. This is clearly enunciated in the second point of the syllabus of the *Utterback* case, wherein it is stated:

"A claim for personal injuries caused by the negligence of an agent or an employee of the State, while engaged in the discharge of a governmental function, may form the basis of a valid moral obligation of the State and justify a legislative appropriation of public funds of the State for the payment of such claim."

It is the contention of the respondent that Code, 17-4-37, as amended, exempts the State from liability because of defective construction or condition of a state road. This statute is merely declaratory of the constitutional provision in the West Virginia Constitution, Article VI, Section 35, which provides that the State of West Virginia shall never be made a defendant in any court of law or equity except in garnishment or attachment proceedings. The statute reads as follows: "The State shall not be made the defendant in any proceeding to recover damages because of the defective construction or condition of any State road or bridge." It has been specifically held that this statute merely means what the Constitution says, that the State cannot be made a defendant in an action at law and is not applicable to moral obligation cases. *State ex rel. Price v. Sims*, 134 W. Va. 173, 58 S.E. 2d 657.

Applying the rules as set out above to the case at bar relative to a moral obligation of the State, we find that this case justifies the application of the rule although the state did not attempt to deny or contest the evidence or claim of the relator and the Claims

Division of the Attorney General's Office did not require that the case be thoroughly explored and merely stated that the prima facie showing of negligence had not been rebutted. This Court does not approve of such action on the part of representatives of the State in such claims and is of the opinion that the interest of the State should be vigorously defended. It nevertheless appears from the record here that the accident was the result of negligence on the part of the employees of the State Road Commission and this failure to defend does not, however, warrant the refusal to approve the action of the Legislature, which is entitled to respect, although it is not binding on this Court in such cases. *State ex rel. Catron v. Sims,* 133 W. Va. 610, 57 S.E. 2d 465.

A similar situation was involved in the case of *State ex rel. Saunders v. Sims,* 134 W. Va. 163, 58 S.E. 2d 654, where the Attorney General stipulated negligence on the part of the State Road Commission and although this Court frowned upon such action it nevertheless appeared from the facts that negligence did exist. The reason for defending the interest of the State and not stipulating facts that would make the State liable in such cases is because employees of the State should never give the money of the State away without legal justification.

The matter as to this Court being bound by the findings of fact and the declaration of a moral obligation is concisely stated in Point 2 of the syllabus of the case of *State ex rel. Adkins v. Sims,* 130 W. Va. 645, 46 S.E. 2d 81, in the following language: "Whether an appropriation is for a public, or a private purpose, depends upon whether it is based upon a moral obligation of the State; whether such moral obligation exists is a judicial question; and a legislative declaration, declaring that such moral obligation exists, while entitled to respect, is not binding on this Court."

The basis of negligence in the instant case is shown by the fact that large boulders were located at an elevation on the side of the highway where this accident occurred and because of certain climatic conditions then existing had been falling upon the highway which was traveled by the public, and at the very spot where the accident in question occurred a large boulder had slid down onto the highway the day before and had been removed by the State Road Commission. Notwithstanding this fact, no safety measure whatsoever was taken by the State Road Commission or its employees, according to the record. The evidence shows that no warning signs had been placed near this location and does not show any protection provided or effort made to remove other boulders which were likely to fall and did later fall. The evidence indicates that the relator was traveling at a reasonable rate of speed and there is no indication of any negligent acts on his part which, if present, would perhaps be a defense to such moral obligation. See *Jones v. City of Mannington,* 148 W. Va. 583, 591, 136 S.E. 2d 882.

The Courts of other states have held that liability existed in similar cases to the one at bar. In the case of *Doulin v. State of New York,* 13 N.E. 2d 472, 277 N. Y. 558, a rock fell from the side of a highway and struck the claimant's automobile in a manner quite similar to the instant case and the State was held responsible for the damage inflicted which was based on its negligence in failing to maintain barriers or retaining walls to protect the highway and prevent large rocks from falling from the sides of the mountain onto the highway.

In the case of *Inabinett v. State Highway Department* (S.C.), 12 S.E. 2d 848, it was held that where the state highway department knew or by the exercise of ordinary care should have known of a defective condition of a tree located near the highway when it stood in such proximity to the highway as to create a haz-

ardous condition, it was the duty of the highway commission to remove it or otherwise protect the safety of persons using the highway.

The case of *Mayor, Etc. of Vicksburg v. McLain*, 6 So. 774, illustrates negligence on the part of a governmental subdivision in such cases as the one at bar. In that case an eight year old child was killed by a slide on the public street caused by an excavation. The Court held that although it was not dangerous at the time the cut was made it later became so and the defendant had sufficient notice in time to repair the excavation but did not do so and this failure to act on the part of the defendant constituted negligence. Of course, in that matter a suit was brought directly against the City which had no constitutional immunity.

The respondent relies on the case of *Adkins v. Sims, supra,* for justification of his refusal to issue the warrant. It is true that the *Adkins* case involved an accident on the state highway and several young people were killed when a car in which they were riding went off the highway. It was contended that the accident was caused by the negligence of the State Road Commission in not providing guard rails, road markers and painted center lines, and it was held in effect that such failure on the part of the State Road Commission did not constitute negligence out of which a moral obligation could be found against the State to require it to compensate for the deaths resulting therefrom. It is true that language was contained in this case that: "* * * every user of the highways travels thereon at his own risk." That statement, however, is only applicable to the facts presented in that case, that is, the users of the highway in this State travel at their own risk insofar as guard rails are concerned and it does not relate to defective conditions on or near the highway caused by the negligence of the State Road Commission. It merely holds that the failure of the State to provide guard rails, markers and painted center lines does not constitute negligence

upon which moral obligation of the State can be based. There was no defective condition of the highway in that case. This is recognized in the *Adkins* case, wherein it is stated on page 661, that: "We do not mean to say that situations may not arise where the failure of the road commissioner properly to maintain a highway, and guard against accidents, occasioned by the condition of the road, may not be treated as such positive neglect of duty as to create a moral obligation against the State, for which the Legislature may appropriate money to pay damages which proximately resulted therefrom. But this is not such a case. Here the simple proposition is: No fault was found with the road."

The writer of this opinion has noted that the claim as filed by Robert Vincent only in his name includes claims for his injuries and for property of his deceased wife, wrongful death of his wife, and personal injuries to his children. The writer, therefore, feels that there should have been separate claims by Robert Vincent, by the wife's personal representative, and by the guardian or guardians for the children, and that if Robert Vincent is claiming for all categories the money should be paid to and received by him as an implied trustee, to distribute to the personal representative and guardian or guardians for their handling in accordance with law such part of the claim as the Attorney General should itemize as belonging to the two latter categories.

Judge Haymond agrees with the writer, but the majority feel it is unnecessary to issue directions to that effect, and this opinion is accordingly written in accordance with the wishes of the majority.

For the reasons stated herein, the writ prayed for is granted.

*Writ granted.*