STATE *ex rel.* C & D EQUIPMENT COMPANY, *etc.*

*v.*

HONORABLE DENZIL L. GAINER, *Auditor, etc.*

(No. 12920)

Submitted March 3, 1970.          Decided April 14, 1970.

Dissenting Opinion June 9, 1970.

84

*Kay, Casto & Chaney, Robert H. C. Kay, Frank L. Taylor, Jr.,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Joseph E. Hodgson, Victor A. Barone,* Assistant Attorneys General, for respondent.

BERRY, JUDGE:

This is an original proceeding in mandamus initially filed in this Court on December 9, 1969, in which the petitioner, C & D Equipment Company, a corporation, for the use and benefit of the First National Bank of South Charleston, West Virginia, to which money had been assigned, seeks a writ to compel the respondent, Denzil L. Gainer, Auditor of the State of West Virginia, to draw a warrant for the payment of an agreed amount between the petitioner and the State Building Commission of West Virginia on the funds of the said Commission in the hands of the State Treasurer of West Virginia, the said agreed amount to be paid to the petitioner as the result of a compromised claim for damages

in connection with a contract between the parties to demolish various houses and other structures in the vicinity of the State Capitol of West Virginia. The first application was refused, but a rule was issued January 19, 1970, on a second application by the petitioner, directing the respondent to show cause why a writ of mandamus should not be granted as prayed for to compel the payment of $29,907.68, the agreed amount of the settlement of the claim against the State Building Commission by the parties. The matter was submitted for decision on arguments and briefs of the respective parties at the January Regular Term, 1970, of this Court.

The controversy involved herein arose out of a contract executed December 29, 1967, between the C & D Equipment Company and the State Building Commission which provided for the demolition by the petitioner of approximately fifty structures in the vicinity of the State Capitol which occupied the site of two new office buildings which have since been erected with some adjacent parking areas. The contract was entitled "Demolition Contract, Project: Capitol Complex," and was awarded to the petitioner as a result of the petitioner being the low bidder for the work to be done after notices had been given to prospective contractors for such work and sealed bids of the various bidders had been submitted to the Commission. The petitioner's bid was in the amount of $41,717 for the work to be done and was accepted by the Commission. Attached to the contract was a list of structures to be demolished and the location thereof by street numbers around the area to be cleared.

According to the allegations of the petition, when the company started to work soon after the contract was executed, it developed that the Commission had not cleared all of the structures for demolition and some tenants were still occupying the structures. As the result of this situation, the company had to move its equipment around the structures which were occupied and not ready for demolition. This resulted in the unnecessary moving of the equipment and in numerous delays in waiting for various structures to be vacated in order that they could be demolished. The company had rented extra

equipment to be used on this project which was necessary to perform the work to be done, and rent therefor had to be paid by the company during this delay. It is claimed by the company, as indicated by an affidavit made on June 10, 1968, that it had been subjected to added costs in the amount of $29,907.68 in addition to the contract price represented by its low bid contained in the contract of $41,717. It was further claimed by another affidavit made on June 12, 1968, that the completion of the work would take two more weeks after June 10, 1968, in which the company would incur an additional loss of $6,702.88 for which it agreed not to press a claim if the Commission would reimburse it for the first amount claim of $29,907.68.

After the complaint with regard to the extra cost was presented to the Building Commission a subcommittee was appointed by the Commission to investigate the matter, and after an examination of the claim was made, it recommended the payment of $29,907.68. The Building Commission, by its secretary, then submitted a requisition for this amount to the State Auditor with the request that he issue a warrant to the State Treasurer to pay such amount.

The Auditor refused to issue a warrant authorizing the payment of the claim and gave as a reason by an endorsement on the requisition that the amount was in excess of the contract, was not supported by an authorized change order, and could possibly be presented as a claim for consideration by the Court of Claims.

After the refusal of the Auditor to issue a warrant on the first requisition a purported change order was drawn up by the Commission and forwarded with another requisition to the Auditor for the payment of the claim of $29,907.68. The Auditor again refused to authorize the payment as requested and stated that the requisition was for an increase of approximately seventy per cent over the amount contained in the original contract and that he did not mean to convey the idea that a change order was all that was needed for the authorization for the payment in such case. He further stated that he

could not authorize the payment unless the matter was submitted to the Court of Claims to determine if there was a moral obligation and that he was accordingly submitting it to the Court of Claims.

The Court of Claims apparently considered the request for an advisory opinion without a hearing and indicated that it was not proper to bring the claim to its attention in this fashion but that there should be a hearing with evidence presented to it on the matter by the petitioner if petitioner desired to file a claim. The petitioner apparently did not ask the Court of Claims to consider its claim but instead instituted the instant proceeding in this Court.

It is contended by the petitioner that the Court of Claims did not have jurisdiction to hear this claim because the money for the operation of the Building Commission comes from the sale of bonds issued by the Commission which do not encumber the general funds of the State and that the Building Commission can be sued in the courts of this State and, therefore, under the statute creating the Court of Claims it has no jurisdiction in such cases.

The respondent filed a demurrer and an answer. In the demurrer he takes the position that the Commission is a State agency and therefore immune from a suit based on negligence or breach of contract, that this matter represents an effort to obtain additional compensation for a contractor, which is prohibited by the Constitution of this State, that it is his duty to refuse the authorization of such payment unless and until the claim has been declared to be a moral obligation by the Legislature and that mandamus, if granted, would compel him to do an illegal or unauthorized act.

The respondent's answer denies there was any particular plan of operation in connection with the work required by the contract between the petitioner and the Commission and states that there was no duty on the part of the Commission to have each building lined up in order to conform to any plan the company might have had for the demolition work. The answer further states that the respondent did not ask

for an advisory opinion of the Court of Claims but merely suggested that it consider the matter as provided by law.

It is also contended by the respondent that regardless of the money source and any power to renegotiate the contracts by the Commission, such payment would be improper because renegotiation does not contemplate an increase in price without some corresponding increase in service rendered and must be for the benefit of the Building Commission in that its interest must be best served; that the Commission is a State agency with public funds and payment of such claim is forbidden by the Constitution; and that the income of the Commission will be derived from rentals paid to it by other State agencies and departments from which the money comes out of appropriations by the Legislature.

The controlling question in this case is whether the State Building Commission is a State agency and can not be sued.

It is the contention of the petitioner that an action may be maintained against the Building Commission in the courts of this State, and therefore the Court of Claims is without jurisdiction, and specifically excluded from hearing such claims by the provisions of Code, 14-2-14 (5), as amended. The authority for such contention cited by the petitioner is that it has been held that the West Virginia Turnpike Commission, which is quite similar to the Building Commission, both of which were created by acts of the Legislature of West Virginia using the same language in many places and stating that each can sue and be sued, was not immune from suit.

It is true that both the Federal District Court and this Court have held that the West Virginia Turnpike Commission is not such an agency of the State of West Virginia as is immune from being sued in the courts of law under the provisions of Article VI, Section 35, of the Constitution of West Virginia. *Guaranty Trust Co. of New York v. West Virginia Turnpike Commission,* 109 F. Supp. 286; *Hope Natural Gas Co. v. West Virginia Turnpike Commission,* 143 W.Va. 913,

105 S.E.2d 630; *Christo v. Dotson,* 151 W.Va. 696, 155 S.E.2d 571.

However, there are marked differences in the two statutes setting up respectively the Turnpike Commission and the Building Commission. Both provide for bonds to finance the building of each, but the money obtained for the use of the Turnpike and to pay off its obligation is obtained from the public users of the Turnpike, while the money obtained to pay off the obligation of the Building Commission is from the State agencies for rent which money is obtained from State funds. This clearly distinguishes the Turnpike Commission from the Building Commission. Then, too, the Turnpike Commission, under the statute creating it, handles its own funds and no requisition is required to be presented to the State Auditor for a warrant directed to the Treasurer to pay any claim against it. This is not true with regard to the statute pertaining to the Building Commission. All moneys of the Building Commission, from whatever source derived, are turned over to the State Treasurer and kept in a separate fund and can not be paid out without a requisition being made to the Auditor and a warrant issued by him to the State Treasurer. The Building Commission statute also requires the State Auditor to audit the funds of the Commission which is not required of the Turnpike Commission. Code, 5-6-4, as amended. On the other hand, it has been specifically held that the State Office Building Commission is a State agency and is immune from suit under the provisions of Article VI, Section 35, of the Constitution of West Virginia which provides that: "The State of West Virginia shall never be made defendant in any court of law or equity, except * * * in any garnishment or attachment proceeding, * * *." *City of Charleston v. Southeastern Construction Company,* 134 W.Va. 666, 64 S.E.2d 676. This principle is clearly stated in the first syllabus point of that case wherein it is stated: "The State Office Building Commission [now called "State Building Commission"] is a State agency, and, as such, is an arm of the State and under Section 35, Article VI of the Constitution of this State is immune from suit."

The original statute, Chapter 43, Acts of the Legislature, Regular Session, 1939, creating this Commission was amended in 1966 and its existence was continued but the name was changed to the State Building Commission of West Virginia. In 1967 several provisions relating to the legislative members were deleted and the Legislature in 1966 deleted the power by implication of the Commission to rent office spaces to private persons or corporations. Section 1 of the 1966 amended Act continued the same language creating the Commission and declaring it to be an agency of the State. See *State ex rel. State Building Comm. v. Bailey*, 151 W.Va. 79, 81, 150 S.E.2d 449 at page 451.

It is the contention of the petitioner that the settlement of the claim between the petitioner and the Commission is merely a renegotiation of the original contract which is authorized by the provisions of Code, 5-6-3, as amended. However, in the first place the settlement of the claim in the amount of $29,907.68 agreed upon by the petitioner and the Commission is not a renegotiation of the contract. It is a compromise of a claim arising out of the contract and presented by the petitioner and to serve petitioner's best interest, and even if it were an actual renegotiation of the original contract the power or authority given to the Commission to renegotiate such contract is only when *"its interest will be best served."* The Commission represents the State and the additional payment of $29,907.68 certainly does not best serve the State's interest, because it is not decreasing the amount of the bid submitted by the petitioner in order to obtain the contract, but is increasing it perhaps to more than that for which other contractors had submitted their bids to perform the work.

It is quite true that after the completion of the work the petitioner was entitled to the amount called for in the contract of $41,717 and the State Auditor would be required to issue a warrant to the Treasurer for such amount; but he is not authorized or required to issue a warrant for any additional amount for claims settled between the parties in connection with the contract. In fact, the allowance of extra compensation in such cases is prohibited by Article VI, Section 38, of the

West Virginia Constitution, and only the Legislature can authorize such payments if and when they are found and declared by it to be moral obligations of the State, and specific appropriations made for payment thereof. Article X, § 3 of the Constitution of West Virginia; *Slack v. Jacob*, 8 W.Va. 612; *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612; *State ex rel. Vincent v. Gainer*, 151 W.Va. 1002, 158 S.E.2d 145. In the final analysis, the existence of a "moral obligation" is a judicial question.

In the case of *George A. Fuller Co. v. Commonwealth*, (Mass.) 21 N.E.2d 529, the contractor contended that it had to do extra work in connection with a road contract and consequently made a claim for over $300,000 more than the original amount of the contract. A settlement was agreed upon with the contractor for $135,000 and the state treasurer refused to pay the claim. It was held that only the legislature could authorize such payment and the authority to negotiate the contract did not give the authority to the state officers to determine the damage as the result of the Commonwealth's error, and any such agreement with regard to damages would be ancillary and create a new and independent obligation which the state officers had no authority to do. In the case of *California Highway Commission v. Riley*, (Calif.) 218 P. 579, a contract was entered into by the state with a contractor to build a road in California. It was decided later by the state commission that it did not want to build the road in question, and it attempted to compromise the claim of the contractor for expenses incurred by paying him several thousand dollars to give up the contract, which the state comptroller refused to pay. It was held in that case that mandamus did not lie to compel the comptroller to pay the claim.

In the case of *Cramp & Sons Ship & Engine Building Co. v. United States*, 216 U.S. 494, 30 S. Ct. Rep. 392, 54 L. Ed. 587, which involved a claim for over $49,000 for extra work in the building of a battleship which the United States Government caused the ship building company to lose, the Supreme Court of the United States held that the executive

officers are not authorized to settle claims for unliquidated damages.

Any monetary claims against an agency of the State which is immune from suit is within the jurisdiction of the Court of Claims. *City of Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298. It was held in that case that by reason of the immunity from suit of a State agency as an arm of the State, the State Court of Claims has jurisdiction of a monetary claim against such State agency and that mandamus is the proper remedy to require the State Court of Claims to assume jurisdiction of a monetary claim against such State agency. This holding is under Code, 14-2-13, as amended, which provides that such court's jurisdiction extends to claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State should in equity and good conscience discharge and pay.

The State Court of Claims has never refused to entertain the claim involved in this proceeding. The petitioner has never presented its petition to the Court of Claims for consideration of the claim and has insisted that the Auditor be forced to issue a warrant for the payment thereof. The authorities dealing with the matter involved in this proceeding clearly indicate that the Auditor can not be required by mandamus to issue a warrant for the payment of the claim involved upon requisition of the State Building Commission as it is purely a compromise of a claim based upon improper performance of a contract. If it could be compromised for $29,000 any like claim could be compromised in the future regardless of the amount.

Although the claim in question may be a just claim and should be paid, there is no authority for the Auditor to issue a warrant for such claim without the authorization for payment by the Legislature. The proper procedure, therefore, to have the claim considered for payment is for the petitioner to file a petition with the Court of Claims as held in the case of *City of Morgantown v. Ducker, supra*.

For the reasons stated herein, the respondent's demurrer is sustained and the writ prayed for is denied.

*Writ denied.*

HAYMOND, JUDGE, dissenting:

I disagree completely with the decision of the majority in this proceeding. In my judgment it ignores the real issue involved, needlessly discusses irrelevant questions to which it applies inapplicable principles of law, and produces an erroneous and intolerably impracticable result which will interfere with the ordinary routine transactions of the various departments of the State which have contractual obligations with private agencies and members of the general public. The result of this decision, as I see it, is that an instrumentality of the State which is authorized to make and enter into contracts with private individuals can not amicably and in good faith compromise any dispute by an agreed settlement between the parties without resorting to a moral obligation to approve such settlement which will necessarily produce doubt, confusion and delay in such transactions between a State agency and any member of the public. Under the present decision it is difficult to understand how any person, who admittedly can not sue the State, can transact business with a State agency on any acceptable or satisfactory basis if such person and the State agency can not settle a contractual difference by a fair and mutually acceptable agreement without resort to an expensive and possibly prolonged proceeding in the Court of Claims for a declaration of a moral obligation and an appropriation by the Legislature.

The material facts, which are fairly stated in the majority opinion, are not controverted. The original contract, based on the bid of the petitioner C & D Equipment Company of $41,717.00 for the demolition work involved, was regularly entered into and was in all respects a valid and binding agreement. The provision which required the State Building Commission to make available the various buildings to be demolished was admittedly violated by the Commission with the result that the petitioner sustained damages in excess of

$29,907.68 which the Commission, after careful investigation and consideration of the facts, concedes to be the amount to which the petitioner is entitled to compensate it for the loss which it sustained by reason of the breach of the contract by the Commission. This amount was fairly and in good faith agreed to by the Commission and the petitioner. No question of fraud or undue advantage against the State is asserted or intimated by any party to the contract or by the defendant. The Commission was fully authorized and empowered by the statute which created it to conclude the settlement agreed to by it and the petitioner. Section 3, Article 6, Chapter 5, Code, 1931, as amended, in effect when the contract was made and renegotiated, contains, among others, these express provisions in paragraphs 8 and 9, with respect to the power of the State Building Commission under its then name of State Office Building Commission:

"8. To make contracts, and to execute all instruments necessary or convenient to effectuate the intent of, and to exercise the powers granted to it by, this article"; and

"9. To renegotiate all contracts entered into by it *whenever, due to a change in situation,* it appears to the commission that its interest will be best served; * * * ." (Emphasis supplied.)

The action of the Commission in making the foregoing settlement, in my judgment, clearly constitutes a renegotiation of the original contract which it was by the statute expressly empowered to do. Those statutory provisions completely refute the irrelevant statement in point 2 of the syllabus, which is not supported by the authority of any decision of this Court, that State agencies being immune from suit are not authorized to entertain claims for unliquidated damages or to enter into any binding compromise of a claim.

After the agreed settlement was reached and a requisition for the agreed amount was submitted to the Auditor, and his refusal to honor the requisition for the stated reasons that the amount was in excess of the contract, was not authorized by a

change order, and could possibly be presented as a claim for consideration by the Court of Claims, which it correctly refused to consider, the Commission renegotiated the contract by an appropriate change order. Under the statute it then became the duty of the Auditor in the performance of a ministerial duty, to honor the requisition and to issue his warrant for the payment of the amount fixed by the settlement.

The decision of the majority in refusing to require the Auditor by writ of mandamus to honor the requisition of the Commission and to issue his warrant for the agreed amount of $29,907.68, to which the petitioner was entitled to compensate it for, not all but a part of the loss actually incurred by it as the result of the admitted breach of the contract by the Commission, ignores the applicable statute and erroneously denies it force and effect. This I would not do.

I disagree with the erroneous statement in the majority opinion that the controlling question in this case is whether the State Building Commission is a State agency and can not be sued. That question is not an issue in this case; and if it were it has been resolved by this Court as long ago as 1950 in *The City of Charleston v. Southeastern Construction Company*, 134 W.Va. 666, 64 S.E.2d 676, in which this Court held in point 1 of the syllabus that the State Building Commission under its then name of the State Office Building Commission "is a State agency, and, as such, is an arm of the State and under Section 35, Article VI of the Constitution of this State is immune from suit." Moreover, the original statute declares in Section 1 that the Commission is "an agency of the State of West Virginia." That question is not even remotely involved and is not relevant to the decision of this case for the reason that the petitioner is not suing the State and has not sued the State in this or any other action. To obtain the relief to which it is entitled a suit against the State, which, of course, can not be maintained, is neither necessary nor desirable. The only relief that could be obtained in an action against the State, if such could be maintained, would be to reduce the claim of the petitioner to judgment to render it certain and a binding obligation. The action of the Commission in the

exercise of its power and authority under the quoted provision of the statute to renegotiate the contract, which it did by the change order, and the exercise by the petitioner of its constitutional right of contract, made the contract, as renegotiated and the settlement resulting from it, a binding legal obligation of the State by reason of the action of its agency, the State Building Commission. That obligation, being legal in character as contradistinguished from a moral obligation, is not within the jurisdiction of the Court of Claims.

The difference between the legal status of the State Building Commission and that of the West Virginia Turnpike Commission is made clear and unmistakable by the prior decisions of this Court involving each of those agencies. As already indicated, the State Building Commission is an arm of the State and as such is immune from suit. Section 1, Article 6, Chapter 5, Code, 1931, as amended; *City of Charleston v. Southeastern Construction Company*, 134 W.Va. 666, 64 S.E.2d 676. It is also well settled that the West Virginia Turnpike Commission is not an agency of the State and is not immune from suit. *Christo v. Dotson*, 151 W.Va. 696, 155 S.E.2d 571; *Hope Natural Gas Company v. West Virginia Turnpike Commission*, 143 W.Va. 913, 105 S.E.2d 630. The petitioner is not suing the State in this proceeding but is seeking a writ to require the defendant, the Auditor of this State, to perform his ministerial duty to honor the requisition of the Commission and to issue his warrant for the agreed amount of the loss, which is in no sense of the word a suit against the State as appears from many such proceedings decided by this Court in which the writ of mandamus has been issued for that purpose. The rather lengthy discussion in the majority opinion with relation to the difference between the State Building Commission and the West Virginia Turnpike Commission is entirely irrelevant to any question involved in this proceeding. The discussion in the majority opinion with reference to the character of a moral obligation and the jurisdiction of the Court of Claims with respect to the establishment of a moral obligation is likewise irrelevant to any issue here involved for, as previously indicated, the petitioner is not seeking to establish his claim on the basis of a moral

obligation but instead is seeking a writ to require the Auditor to discharge a ministerial duty.

Thought the Court of Claims under the statute creating it has jurisdiction of claims which can not be enforced by any suit against the State or any of its instrumentalities but which instead must be disposed of by declaration of a moral obligation by the Legislature and an appropriation for the payment of the claim, the claims that have been dealt with by the Court of Claims and its predecessors, unlike the claim here involved which is not disputed as to its validity or amount but is agreed to between the parties, have been claims in which the validity or the amount has not been admitted but instead had to be established by proof upon hearing by the Court of Claims. As there is no dispute between the parties as to either of those factors there is no necessity for determination of either of them by any action of the Court of Claims.

I have prepared the opinions of this Court in many of the cases involving moral obligations and the jurisdiction of the Court of Claims in such matters and in none of those cases was the validity or the amount of the claim admitted by any of the parties but in every instance the validity or the amount of the claim was challenged to the extent that the claimant was required to establish it by evidence. See *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298; *State ex rel. Cox v. Sims,* 138 W.Va. 482, 77 S.E.2d 151; *State ex rel. Utterback v. Sims,* 136 W.Va. 822, 68 S.E.2d 678; *Price v. Sims,* 134 W.Va. 173, 58 S.E.2d 657; *Saunders v. Sims,* 134 W.Va. 163, 58 S.E.2d 654; *State ex rel. Davis Trust Company v. Sims,* 130 W.Va. 623, 46 S.E.2d 90; *State ex rel. Cashman v. Sims,* 130 W.Va. 430, 43 S.E.2d 805, 172 A.L.R. 1389.

The controlling question for decision in this proceeding is not, as erroneously stated by the majority, whether the State Building Commission is an agency of the State which is constitutionally immune from suit or whether the claim here involved is to be disposed of as a moral obligation, but instead is whether the State Building Commission, under the

statute previously quoted in this dissenting opinion, had the authority to renegotiate the contract to include the loss admittedly sustained by the petitioner before its services under the contract were fully completed and, if so, whether the Auditor may be required by writ of mandamus to honor the requisition of the Commission and to issue his warrant for the payment of the admitted amount of the loss. In my opinion, by virtue of the provisions of paragraphs 8 and 9 of Section 3, heretofore quoted, and Section 4, Article 6, Chapter 5, Code, 1931, as amended, and by several decisions of this Court, which are not even mentioned or considered in the majority opinion, the controlling question here involved should have been resolved in favor of the petitioner.

The applicable statute, Section 4, Article 6, Chapter 5, Code, 1931, as amended, expressly provides that "All moneys of the commission from whatever source derived shall be paid to the treasurer of the State of West Virginia, who shall not commingle said moneys with any other moneys, but shall deposit them in a separate bank account or accounts. The moneys in said account shall be paid out on check of the treasurer *on requisition* of the chairman of the commission, or of such other person as the commission may authorize to make such requisition." (Emphasis supplied.) Under the quoted provisions of the statute it was the mandatory non-discretionary duty of the defendant, the Auditor of this State, to honor the requisition of the Commission and issue a warrant for the payment of the amount provided by the contract as renegotiated and embraced in the change order; and mandamus lies to require him to comply with the requirement of the statute. The payment of the contract price as renegotiated by the Commission, including the agreed amount of $29,907.68, was expressly authorized by the provisions of paragraphs 8 and 9 of Section 3 and the quoted provisions of Section 4, Article 6, of the statute. There is no contention that there is not sufficient money in the separate account of the Commission with the Treasurer of the State to pay the claim of $29,907.68, which is conceded to be owing by the Commission.

Under several decisions of this Court, which are not even mentioned in the majority opinion, mandamus lies to compel the Auditor to honor the requisition of the Commission. Some of these cases are: *State ex rel. Board of Governors of West Virginia University v. Sims*, 140 W.Va. 64, 82 S.E.2d 321; *State ex rel. West Virginia Board of Education v. Sims*, 139 W.Va. 802, 81 S.E.2d 665; *State ex rel. Roth v. Sims*, 139 W.Va. 795, 81 S.E.2d 670; *State ex rel. West Virginia Commission on Interstate Cooperation v. Sims*, 135 W.Va. 257, 63 S.E.2d 524; *State ex rel. The West Virginia Board of Aeronautics v. Sims*, 129 W.Va. 694, 41 S.E.2d 506; *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612. In all those cases the Auditor was required to honor the requisition submitted to him and to issue the required warrant for the payment of the claim and in none of them was a moral obligation involved or any contention that payment of the claim should be made by way of a moral obligation. The holding in each of those cases was that when an agency of the State, which was immune from suit, was authorized by statute to approve and pay a claim, as the State Building Commission is authorized to do under paragraphs 8 and 9, Section 3 and Section 4 of Article 6 of the statute, it was the mandatory nondiscretionary duty of the Auditor to honor the requisition submitted by such agency and to issue a warrant for the payment of the claim.

In the most recent of those cases, *State ex rel. Board of Governors of West Virginia University v. Sims*, 140 W.Va. 64, 82 S.E.2d 321, this Court held that when a requisition regular in form and properly itemized for the payment of annual membership dues of a public educational institution in this State to a regional educational accrediting association is submitted to the Auditor and the expenditure of public money in payment of such dues has been authorized and approved by the Board of Public Works and has been approved by the budget director, as provided by statute, and there are sufficient funds appropriated for the purpose in the state treasury to pay such dues, it is the mandatory duty of the Auditor to honor such requisition and mandamus lies to compel him to perform that act. In that case the Auditor had refused to honor the requisition submitted by the president

of West Virginia University, which had been approved by the Board of Governors, in the sum of $350.00 in favor of the North Central Association of Colleges and Secondary Schools for the purpose of paying the 1953-54 dues of the university as a member of that association. The Auditor refused to honor the requisition upon the grounds that (1) neither the educational work nor the professional standing of the university will be promoted by continuing membership in the association or impaired by the termination of such membership; (2) the association renders no services to the university and membership in it confers no benefit to the university; and (3) payment of the proposed membership dues was not for a public purpose but for a private purpose in contravention of Article X, Section 10, of the Constitution of this State. Payment of such dues was authorized by statute and was approved by the board of public works and by the budget director.

In the opinion in the case just cited this Court used this pertinent language, which is here peculiarly applicable: "The Auditor in the discharge of his duties has the right, in a mandamus proceeding to compel him to honor a requisition for the payment of public funds appropriated by the Legislature, to question the constitutionality of the appropriation, *State ex rel. West Virginia Board of Education v. Sims,* 139 W.Va. 802, 81 S.E.2d 665; *Woodall v. Darst,* 71 W.Va. 350, 77 S.E. 264, 80 S.E. 367, 44 L.R.A., N.S., 83, Ann. Cas. 1914B, 1278; but it has been said that if an administrative officer refuses to act under a statute on the ground of its unconstitutionality he does so at his peril and that if he is mistaken he is liable for nonfeasance of duty. See *Payne v. Staunton,* 55 W.Va. 202, 46 S.E. 927. The Auditor, however, does not have the right to substitute his opinion or judgment for that of the Board of Public Works in authorizing and approving the expenditure of public funds for the payment of membership dues of a public educational institution to an educational accrediting organization, or of the Budget Director in approving a requisition for such expenditure, or to question the wisdom, the propriety or the necessity of such action by the Board of Public Works or the Budget Director, or the policy of the

Legislature in enacting Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, and in appropriating funds for the payment of dues and membership in the organizations mentioned in that section of the statute. *State ex rel. West Virginia Board of Education v. Sims*, 139 W.Va. 802, 81 S.E.2d 665."

In *State ex rel. West Virginia Board of Education v. Sims*, 139 W.Va. 802, 81 S.E.2d 665, the petitioner West Virginia Board of Education, a State agency immune from suit, sought a writ to require the defendant, Edgar B. Sims, Auditor of the State of West Virginia, to honor a requisition submitted by the business manager of Shepherd College, a State educational institution, in the amount of $242.77 for the purpose of paying Sarah Helen Cree, professor of physical education at Shepherd College, who engaged in a regular course of graduate study in physical education at Penn State, State College, Pennsylvania, for which she had been granted sabbatical leave by the West Virginia Board of Education. Sabbatical leaves and payment for them had been authorized by a statute of this State, Section 12, Article 2, Chapter 74, Acts of the Legislature, Regular Session, 1953. The Auditor refused to honor the requisition on these grounds: (1) authorized payment of moneys from the personal services appropriation of the State educational institutions under the control of the West Virginia Board of Education was for a private purpose in violation of Section 6, Article X, of the Constitution of this State and (2) the statute grants credit of the State to a private person, in violation of the same section and article of the Constitution. This Court awarded the writ and held in point 2 of the syllabus that "Though it is competent for the Auditor of the State of West Virginia to question the authority of the West Virginia Board of Education to grant sabbatical leaves to members of the faculties of the State educational institutions under the control of the board, as provided by Section 12, Article 2, Chapter 74, Acts of the Legislature, Regular Session, 1953, it is not competent for the auditor to substitute his opinion or judgment for that

of the state board of education in awarding sabbatical leaves in conformity with the statute, or to question the wisdom, propriety or even the necessity of the action on the part of the state board of education in awarding sabbatical leaves, or the policy which, in the first instance, the Legislature entertained in enacting Section 12 of the statute." Here, as in that case and in other such cases, the Auditor may not substitute his opinion or judgment, as he has sought to do, for that of the State Building Commission or to question the wisdom, propriety or necessity of its action in settling the claim of the petitioner.

In the case at bar, as in the case just cited, the requisition of the State Building Commission was authorized by, and issued pursuant to, the statutory provisions already cited and, as in the cited case, the Auditor is charged with a ministerial duty of honoring the requisition submitted to him. It is significant that no question of moral obligation was raised or intimated in that case.

In *State ex rel. Roth v. Sims*, 139 W.Va. 795, 81 S.E.2d 670, an original proceeding in mandamus in this Court, in which the petitioner Roth, State Director of Public Assistance, sought a writ to require the Auditor to honor a requisition drawn by him for the payment of $97.50 to Elizabeth Mitchell, an employee of the Department of Public Assistance, and to require the Auditor to issue his warrant in payment of the requisition, this Court held that it was the clear legal duty of the defendant to honor the requisition. The statutes considered in that case provided that the State Director should establish regular periods of technical and specialized instructions for employees of the department and should designate the persons who shall attend each period of instruction and that such attendance should be compulsory and be compensated for as a part of regular employment. In accordance with the statute the Director issued the requisition which the Auditor refused to honor. This Court unanimously held that it was the clear legal duty of the Auditor to honor the requisition drawn by the State Director against funds paid into the State Treasury by the federal government for payment to an employee of the department

for the purpose of enabling the employee to obtain technical and specialized training in child welfare services when such requisition was drawn in accordance with the plan adopted and approved by the State and federal governments pursuant to applicable legislation. In that case also, it was not even suggested that a moral obligation for the payment of the amount covered by the requisition would be required for that purpose.

In *State ex rel. West Virginia Commission on Interstate Cooperation v. Sims*, 135 W.Va. 257, 63 S.E.2d 524, the petitioner sought a writ in a mandamus proceeding in this Court to compel the defendant Sims, Auditor of the State of West Virginia, to honor a requisition drawn on him by the petitioner in favor of the Council of State Governments in the amount of $6,000.00 which requisition the Auditor had refused to honor. At its 1949 session the Legislature appropriated the sum of $8,500.00 for the Commission with the provision that "Out of the above appropriation the sum of $6,000.00 may be made available for West Virginia's membership in the council of state governments." The chairman of the Commission submitted a requisition for that amount, in accordance with the appropriation, this Court awarded the writ, and held in point 2 of the syllabus that " 'A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty.' *Glover v. Sims*, 121 W.Va. 407," [3 S.E.2d 612]. In that case also, no question was raised as to the requirement of a moral obligation for the payment of the requisition in favor of the Council of State Governments. See also *State ex rel. The West Virginia Board of Aeronautics v. Sims*, 129 W.Va. 694, 41 S.E.2d 506; *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612. In each of those two cases, as in the cases previously cited and discussed, the Auditor was required to honor the requisition submitted to him by a representative of a State agency, as in the case at bar, which had been authorized by statutory provisions.

The foregoing cases are controlling in the decision of the case at bar. In this proceeding the duly authorized State agency is the Building Commission which, under paragraph

9 of Section 3, Article 6, Chapter 5, Code, 1931, as amended, is authorized to agree to the amount of $29,907.68 by its power to renegotiate the contract between the Commission and the petitioner "due to a change in situation" and is expressly authorized to issue its requisition for that amount under Section 4 of that statute.

I disagree with the statements in the majority opinion that the settlement between the petitioner and the Commission to cover the admitted loss suffered by the petitioner in the sum of $29,907.68 is not a renegotiation of the contract but that "even if it were an actual renegotiation of the original contract the power or authority given to the Commission to renegotiate such contract is only when *'its interest will be best served.'* " It is obvious to me that the Commission did renegotiate the contract to extend it to the loss actually sustained by the petitioner as a result of the breach of the contract by the Commission under the statutory power of the Commission to renegotiate the contract "whenever, due to a change in situation, it appears to the commission that its interests [not the State's interest] will be best served;" and, contrary to the position of the majority that payment of the settlement does not best serve the State's interest, I assert that the action of the Commission in treating the petitioner fairly and in making it substantially, though not completely, whole for the loss caused it by the breach of the contract by the Commission does *best serve the interest of both the Commission and the State* from every standpoint and particularly from the standpoint of equity, justice and fair dealing which the State owes to its people. The State, by and through the Commission, dealt fairly with the petitioner in agreeing to pay the loss it had caused the petitioner and its attempt to do justice should not be arbitrarily thwarted by the refusal of one of its administrative officers to discharge his nondiscretionary duty. I also assert that the refusal of the State to make good the loss which the breach of the contract had caused the petitioner will constitute a manifest detriment to the interest of the State which would be harmful because inequitable and the resulting loss of its prestige for honesty and fair dealing would far outweigh the cost of relieving the

petitioner of a substantial amount of its admitted loss. Furthermore, payment of an amount equal to, but not in excess of, the loss sustained by the petitioner will not best serve the interest of the petitioner other than to make it substantially, though not completely, whole for it will receive nothing in excess of the loss it has suffered by the wrong of the Commission. On that basis it would seem that payment of such loss will best serve the interest of the State rather than the interest of the petitioner.

The expression in the majority opinion that " * * * the allowance of extra compensation in such cases [meaning the $29,907.68 item] is prohibited by Article VI, Section 38, of the West Virginia Constitution, and only the legislature can authorize such payments if and when they are found and declared by it to be moral obligations of the State, and specific appropriations made for payment thereof" is palpably erroneous and utterly inconsistent with the conclusion reached by the majority. The quoted statement is erroneous because the $29,907.68, the amount of petitioner's loss, is not "extra compensation granted or allowed after services have been rendered or the contract made" which is prohibited by Article VI, Section 38, of the Constitution of this State, because it is clear that when the loss was incurred in the rendition of services by the petitioner in the performance of the contract the services required by the contract had not been completed and were not rendered after the contract had been made in its final form as modified by the change order in the renegotiation of the original contract. Assuming, however, that payment of the amount of the settlement should constitute "extra compensation" prohibited by the Constitution, as stated by the majority, it is clear beyond question that the Legislature can not declare a moral obligation for the payment of any money in violation of any provision of the Constitution. In every instance in which a moral obligation has been declared by the Legislature and sustained as valid by this Court it has clearly appeared that there could be no valid moral obligation if it attempted to make any payment forbidden by any provision of the Constitution of this State. So, if the majority is correct in its expressed conclusion that

such payment is the forbidden "extra compensation," it would be futile to require the petitioner to submit its claim for such "extra compensation" to the Court of Claims for a declaration of a moral obligation by the Legislature.

I also challenge as completely gratuitous, erroneous, misleading and irrelevant these sentences in the majority opinion: "Although the claim in question may be a just claim and should be paid, there is no authority for the auditor to issue a warrant for such claim without the authorization for payment by the legislature. The proper procedure, therefore, to have the claim considered for payment is for the petitioner to file a petition with the Court of Claims as held in the case of *City of Montgomery v. Ducker, supra.*" In the first place, the requisition for a warrant for the payment of the claim of the petitioner is authorized by the Legislature by the cited provisions of Sections 3 and 4, Article 6, Chapter 5, Code, 1931, as amended. Secondly, in such circumstances, the Auditor not only is authorized, but by the six decisions of this Court cited in this opinion should be required, to issue his warrant for the payment of the claim and those decisions completely refute the statement of the majority. Thirdly, if the claim here involved is for the constitutionally impermissible "extra compensation," as the majority indicates it is but which, of course, it is not, it can not constitute the basis for a valid moral obligation. Fourthly, the gratuitous suggestion of the proper procedure is merely irrelevant advisory dicta. And lastly, the case of *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298, which involved a sharply disputed claim as to validity and amount, the opinion in which was prepared by me, is clearly distinguishable from the present claim which is not controverted as to validity or amount by the parties to the renegotiated contract between the petitioner and the Commission.

For the reasons stated and under the cited decisions of this Court, I would grant the writ as prayed for by the petitioner and require the defendant to honor the requisition submitted by the Commission and to issue a warrant for the payment of the claim.